UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADIA ELETRIBI,<br><br>Plaintiff,<br><br>vs.<br><br>REVIVE ORGANICS, INC., d/b/a Revive Superfoods<br><br>Defendant. | **COMPLAINT FOR DAMAGES AND JURY DEMAND**<br><br>Civil Action No.: |

## INTRODUCTION

Plaintiff Nadia Eletribi, by and through her attorneys, Heisman Nunes & Hull LLP and Marler Clark, LLP PS, *pro hac vice* pending, alleges upon information and belief as follows:

## PARTIES

1.1  The Plaintiff is a resident of Centereach, New York, in the County of Suffolk, and is therefore a citizen of the State of New York.

1.2  The Plaintiff purchased and consumed an adulterated and/or contaminated product, namely Revive Superfoods Smoothies, prepared manufactured, packaged, distributed, and/or sold by the Defendant, Revive Organics, Inc.

1.3  The Defendant, Revive Organics, Inc., which does business under the tradename "Revive Superfoods" (hereinafter "Defendant" or "Revive Superfoods") is incorporated in Canada, with headquarters and principal place of business located at 2958, Islington Ave, Toronto, Ontario, M9L2k6, and is therefore a citizen of a foreign country.

1.4     Defendant manufactured, packaged, distributed, and/or sold an adulterated and/or contaminated food product, namely "Revive Superfoods Smoothies" to Plaintiff, with knowledge that its product would be distributed into the interstate marketplace in the United States including to consumers, like Plaintiff, in the State of New York. On information and belief, Revive Superfoods also developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this complaint.

## JURISDICTION AND VENUE

2.1     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1332(a) because the matter in controversy far exceeds $75,000.00 exclusive of costs and it is between citizens of the United States and a foreign country, namely Canada.

2.2     Venue in the United States District Court of the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes action occurred in this judicial district.

## FACTUAL BACKGROUND

### The Defendant's Products

3.1     The Defendant Revive Superfoods was founded in 2018 and is one of the largest direct-to-customer food brands that operate in the United States.

3.2     The Defendant's self-described mission is to "provide accessible superfoods that are sustainably sourced without compromising taste and price".[1]

---

[1] Revive Foods, *Our Story, https://revivesuperfoods.com/about/ (Last accessed July 21, 2022).*

2

3.3     Defendant's products are marketed (quoting from its own website) as "chef-crafted super meals that are cost-effective and ready-to-eat in minutes". The product recipes include "pre-portioned, flavourful superfood smoothies, meals, oats, soups, and falafel pops."[2]

3.4     The Defendant purports to "use simple, honest ingredients that are flash-frozen at peak nutrition and are available in convenient on-the-go cups".[3]

3.5     Revive Superfoods is subscription based and offers monthly and weekly plans that allows customers to order their choice of pre-portioned items from a set menu of options. Customers can build their own custom box and select 9, 12, or 24 cups per week or 12 or 24 cups per month.[4]

3.6     On information and belief, in addition to the Plaintiff, numerous people across the United States have developed an illness syndrome identical or substantially like the Plaintiff's after consuming the Defendant's Revive Superfoods Smoothies.

3.7     On information and belief, these people have no shared exposures other than the consumption of the Revive Superfoods Smoothies.

3.8     On information and belief, all the people who fell ill after consuming Revive Superfoods Smoothies, including the Plaintiff, consumed the Defendant's Pineapple & Mango Smoothie.

3.9     The ingredients used in the Defendant's Pineapple & Mango Smoothie are:[5]

- Mango
- Banana
- Mango Powder

---

[2] Id.
[3] Id.
[4] Id.
[5] Revive Foods, Smoothies, https://revivesuperfoods.com/about/ (Accessed July 4, 2022).

- Camu Camu
- Pineapple
- Tara
- Lime Extract

3.10    According to the U.S Food and Drug Administration, on June 19, 2022, Daily Harvest Inc., a direct-to-customer food brand like the Defendant, voluntarily recalled approximately 28,000 units of their French Lentil + Leek Crumbles product produced between April 28 and June 17, 2022.

3.11    The recall followed more than 470 instances of consumers experiencing illness or adverse reactions after consumption of the French Lentil + Leek Crumbles. The illnesses reported by the consumers of the Daily Harvest French Lentil + Leek Crumbles were similar those reported by persons who fell ill after consuming the Defendant's smoothies.

3.12    The ingredients used in Daily Harvest's French Lentil + Leek Crumbles are[6]:

- French Lentil
- Butternut Squash
- Hemp Seed
- Quinoa
- Cremini
- Tara

3.13    The only common ingredient between the Daily Harvest's French Lentil + Leek Crumbles and Defendant's Pineapple & Mango Smoothie, both which caused similar gastrointestinal complications, is Tara. Tara is a shrub or tree from Peru used by Daily Harvest

---

[6] Daily Harvest, https://www.daily-harvest.com/ (Accessed July 3, 2022).

4

and the Defendant as a plant-based source of protein in their respective French Lentil + Leek Crumbles and Pineapple & Mango Smoothie products.

3.14    On July 19, 2022, Daily Harvest issued a communication to its customers advising that, following their internal investigations, they identified Tara as the cause of the illnesses linked to their French Lentil + Leek Crumbles product.

3.15    On information and belief, the only product by the Defendant that contained Tara was the Pineapple & Mango Smoothie.

3.16    The Defendant has since discontinued the sale of its Pineapple & Mango Smoothies.

### The Plaintiff's Illness

4.1    The Plaintiff received a shipment of Revive Superfoods Smoothies on February 8, 2022. The smoothies were a gift from a friend, as the Plaintiff had just given birth to a newborn baby. The shipment included the Defendant's Pineapple &Mango Smoothies, which the Plaintiff consumed for the next several days.

4.2    On February 18, 2022, the Plaintiff experienced sharp stomach pains, which progressed to feeling cold and fatigued the next day. The Plaintiff's symptoms worsened and on February 20, 2022, she started experiencing sharp stomach pain, severe chills, high fever, dizziness, itchiness, extreme fatigue, nausea, and vomiting. The Plaintiff was hospitalized for her symptoms for four days, from February 21 to February 24.

4.3    Unaware of what was causing her illness, the Plaintiff received another shipment of the Defendant's smoothies on March 8, 2022, including the Defendant's Mango & Pineapple Smoothie. The Plaintiff drank the smoothies for the next several days.

4.4     The Plaintiff's symptoms resurfaced on March 27, 2022, and progressed in severity to a point where on March 29, 2022, she was admitted in hospital again. The Plaintiff spent five days in hospital this time around.

4.5     As she was still unaware what was causing her illness, the Plaintiff resumed consumption of the Defendant's smoothies on or about May 14, 2022. The Plaintiff was readmitted to the hospital for the third time on May 16, 2022, for recurring symptoms including sharp stomach pain, severe chills, high fever, dizziness, itchiness, extreme fatigue, nausea and vomiting and dark urine. She was discharged on May 17, 2022, the following day.

4.6     The Plaintiff continues to suffer from her symptoms, following her consumption of the Defendant's smoothies. Plaintiff has sustained serious personal injuries; suffered, and will continue to suffer, significant pain and other physical discomfort; incurred, and will continue to incur, substantial medical expenses; has missed, and will likely miss in the future, work and time necessarily dedicated to advancement in her profession; and remains at risk for future health complications with damages far in excess of $75,000.00, the jurisdictional threshold of this court.

## CAUSES OF ACTION

### Strict Liability – Count I

5.1     Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 4.6.

5.2     At all times relevant hereto, the Defendant was the manufacturer, packager, distributor and/or seller of the contaminated food product that was purchased and consumed by Plaintiff.

5.3     The contaminated food product that the Defendant manufactured, packaged, distributed, and/or sold was, at the time it left the Defendant's control, defective and unreasonably

dangerous for its ordinary and expected use by the intended public, including Plaintiff, because Defendant's product was contaminated by a substance injurious to human health.

5.4     The contaminated food product that the Defendant manufactured, packaged, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The contaminated food product that the Defendant manufactured, packaged, distributed, and/or sold was used by Plaintiff in the manner expected and intended.

5.5     The Defendant owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was not contaminated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The Defendant breached this duty.

5.6     The Defendant owed a duty of care to the public, including Plaintiff, to manufacture, package, distribute and/or sell food that was fit for human consumption, and that was safe to consume to the extent contemplated by a reasonable consumer. The Defendant breached this duty.

5.7     As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food product that the Defendant manufactured, packaged, distributed and/or sold, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Breach of Warranty – Count II

5.8     Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.7.

5.9     The Defendant is liable to Plaintiff for breaching express and implied warranties that it made regarding its food product that Plaintiff purchased and consumed. These express and

implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, the Defendant expressly warranted, through their sale of food to the public and by the statements and conduct of its employees and agents, that the food it manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise adulterated, contaminated, or injurious to health.

5.10   The contaminated food that the Defendant sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

5.11   The contaminated food sold to Plaintiff was not fit for the uses and purposes intended, *i.e.,* human consumption; thus, the sale of this product to Plaintiff constituted a breach of the implied warranty of fitness for its intended use.

5.12   As a direct and proximate cause of the Defendant's breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence – Count III

5.13   Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.12.

5.14   Defendant owed to Plaintiff a duty to use reasonable care in the manufacture, packaging, distribution, and/or sale of its food product, the observance of which duty would have prevented or eliminated the risk that Defendant's food product would become contaminated with any dangerous pathogen. Defendant, however, breached this duty and was therefore negligent.

5.15   Defendant had a duty to comply with all federal, state, and local statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. Plaintiff was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and

provisions pertaining to the manufacture, packaging, distribution, and sale of similar food products. Defendant, however, breached this duty and was therefore negligent.

5.16   Defendant had a duty to properly supervise, train, and monitor its respective employees, and to ensure that its respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the manufacture, distribution, packaging, and sale of similar food products. Defendant, however, breached this duty and was therefore negligent.

5.17   Defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendant, however, breached this duty and was therefore negligent.

5.18   As a direct and proximate result of Defendant's negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence *Per Se* – Count IV

5.19   Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.18.

5.20   Defendant had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the New York State's Agriculture and Markets Law and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

5.21　In breach of this duty, Defendant failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, packaging and/or sale of adulterated food.

5.22　As a direct and proximate result of conduct by Defendant that was negligent *per se*, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## DAMAGES

6.1　Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendant, in an amount that shall be fully proven at the time of trial. These damages include but are not limited to past and future pain and suffering, past and future damages for loss of enjoyment of life, past and future emotional distress, past and future medical and related expenses, including pharmaceutical expenses, travel and travel-related expenses, past and future lost wages, and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

7.1　Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendant as follows:

A.　Ordering compensation for all general, special, incidental, and consequential damages suffered by Plaintiff because of Defendant's conduct.

B.　Awarding Plaintiff costs and expenses, including reasonable attorneys' fees to the fullest extent allowed by law; and

C.　Granting all such additional and/or further relief as this Court deems just and equitable.

DATED:   July 25, 2022
         New York, New York

                **HEISMAN NUNES & HULL LLP**

By:   /s/ Paul V. Nunes
      Bar No.: PN2853
      Paul V. Nunes, Esq.
      69 Cascade Drive
      Suite 102
      Rochester, New York 14614
      Telephone: (585) 270-6922
      pnunes@hnhattorneys.com

                **MARLER CLARK, LLP, PS**

By:   /s/ William D. Marler
      William D. Marler, Esq., *pro hac vice* pending
      The Standard Building
      1012 1st Avenue, Fifth Floor
      Seattle, Washington 98104
      Telephone: (206) 346-1888
      bmarler@marlerclark.com

      *Attorneys for Plaintiff*