UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————————————

NADIA ELETRIBI, individually and on behalf of )
her minor son, Z.G., )
           )
             Plaintiff, )
           )
             v. )
           )
REVIVE ORGANICS, INC., d/b/a Revive Superfoods, )
MISKI ORGANICS SUPERFOODS, INC., PERUVIAN )
NATURE S&S SAC, and MOLINOS ASOCIADOS SAC, )
           )
             Defendants. )

—————————————————————————————

**SECOND AMENDED
COMPLAINT
FOR DAMAGES
AND JURY DEMAND**

Civil Action No.:
1:22-cv-04362-PKC-SJB

## <u>INTRODUCTION</u>

       Plaintiff Nadia Eletribi, individually and on behalf of her minor son, Z.G., by and through

her attorneys, Paul V. Nunes, Esq. of Heisman Nunes & Hull LLP and William D. Marler, Esq. of

Marler Clark, LLP PS (admitted *pro hac vice*), alleges upon information and belief as follows:

## <u>PARTIES</u>

       1.1     Plaintiff Nadia Eletribi is a resident of Centereach, New York, in the County of

Suffolk, and is therefore a citizen of the State of New York.

       1.2     Plaintiff is the parent and legal guardian of Z.G., who is under 18 years of age and

thus a minor. Z.G. is also a citizen of the State of New York.

       1.3     Plaintiff purchased and consumed a toxic, adulterated, and/or contaminated food

product, namely smoothies, prepared, manufactured, packaged, distributed, and/or sold by

Defendant Revive Organics, Inc., d/b/a Revive Superfoods (hereinafter "Revive Superfoods").

       1.4     Defendant Revive Superfoods is incorporated in Canada, with its headquarters and

principal place of business located at 2650 Bristol Circle, Suite 500, Oakville, Ontario L6H 6Z7,

and is therefore a citizen of a foreign country.

1.5     Revive Superfoods prepared, manufactured, packaged, distributed, and/or sold a toxic, adulterated, and/or contaminated food product, namely "Revive Superfoods Smoothies" to Plaintiff, with knowledge that its product would be distributed into the interstate marketplace in the United States, including to consumers in the State of New York. On information and belief, Revive Superfoods also developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this complaint.

1.6     Defendant Miski Organics Superfoods, Inc. (hereinafter "Miski Organics") is incorporated in Canada, with its headquarters and principal place of business located at 70 Ellis Dr., Unit 8, in Barrie, Ontario L4N 8Z3, and is therefore a citizen of a foreign country.

1.7     Miski Organics "is a proudly (sic) family-owned Canadian company with Peruvian roots," according to statements on its website[1]. Miski Organics is in the business of, among other things, sourcing and importing healthy food products from Peru. The website continues:

> Miski Organics provides nutrient-rich, certified organic, non-GMO, gluten free products to support peoples' (sic) health. Our product line includes Andean Grains and Seeds, Dried Superfruits, Raw Dried Superfoods, Raw Cacao and Derivates – all sustainably grown and cultivated in Peru. By sourcing from local farmers in the coastal valleys, Andean mountains and Amazon region of Peru[.]

1.8     Miski Organics prepared, manufactured, packaged, imported, distributed and/or sold a toxic, adulterated and/or contaminated food product, namely tara flour, to Defendant Revive Superfoods, who utilized the flour to manufacture the toxic, adulterated, and/or contaminated smoothie products that are the subject of this action.

1.9     At all material times relevant, Miski Organics prepared, manufactured, distributed, and sold food products to a customer base that spans the continent of North America, including,

---

[1] *See* miskiorganics.com.

on information and belief, customers in the State of New York. Miski's website states as follows: "Our customers include health-conscious consumers, retailers, distributors, and food and beverage companies across North America." Therefore, Miski Organics had a continuous and systematic contact with the State of New York through its distribution and sale of food products, including the tara flour product that is the subject of this lawsuit, to customers in the State, and, as such, is subject to the jurisdiction of this Court.

1.10     Defendant Peruvian Nature S&S SAC is a Peruvian company with its principal place of business located at Calle Las Gardenias, Mz I, Lote 12, Urb, Lurin, Peru. Defendant Peruvian Nature is therefore a foreign citizen of Peru.

1.11     Peruvian Nature "can deliver to wherever you are around the globe," according to statements on its website[2], and one of its flagship "Roots and Pods" products is tara protein. With regard to tara protein, the website states:

> The Tara protein powder of Peruvian Nature, is obtained from the purificaton of the germ (internal part of the seed), achieved by the selection and grinding of the same and whose result is the only product of Tara, purified, for human consumption, of the market (*sic*).
> Wholesale of Tara Protein in Peruvian Nature: Available All Year Round.
> Uses and applications: As a base for protein and dietary supplements. In bakery and pasta elaboration. Preparation of protein drinks.

1.12     Peruvian Nature not only exports its food products worldwide, including tara to the United States, it also frequently advertises its products to potential buyers at tradeshows across the country. The company's website proudly boasts, "Peruvian Nature's agenda is full of events this 2022![3]" On information and belief, Peruvian Nature attended the SupplySide West tradeshow in Mandalay Bay, Las Vegas, from October 31 to November 4, 2022, and will be attending the Natural Products Expo West in Anaheim, California, from March 7-11, 2023.

---

[2]     *See* peruviannature.com.
[3]     *See* peruviannature.com/news/peruvian-natures-agenda-is-full-of-events-this-2022/.

1.13    On information and belief, Miski Organics sourced and imported the tara flour that Defendant Revive Superfoods utilized to manufacture the smoothie products that are the subject of this action from Peruvian Nature S&S S.A.C. Peruvian Nature S&S S.A.C., in turn, obtained their tara from Molinos Asociados SAC.

1.14    Defendant Molinos Asociados SAC is " [a]company founded in Lima, Peru in 2007 with the objective of processing and generating added value to the fruit of the Peruvian tara tree[4]." It is owned by Herbert Telge Noriega, with its principal place of business located at Calle 2 Mz.N Lt.4 Las Vertientes, Villa El Salvador, Lima, Peru. Defendant Molinos Asociados is therefore a foreign citizen of Peru. At all times relevant, Molinos Asociados was a processor and distributor of tara products.

## JURISDICTION AND VENUE

2.1    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1332(a) because the matter in controversy exceeds $75,000.00 exclusive of costs and it is between citizens of the United States and two foreign countries, namely Canada and Peru.

2.2    Venue in the United States District Court of the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims and causes of action occurred in this judicial district.

## FACTUAL BACKGROUND

3.1    Defendant Revive Superfoods was founded in 2018 and is one of the largest direct-to-consumer food brands that operate in the United States.

3.2    Revive Superfoods's self-described mission is to "provide accessible superfoods that are sustainably sourced without compromising taste and price".[5]

---

[4]    *See* molinosasociados.com.
[5] Revive Foods, *Our Story, https://revivesuperfoods.com/about/ (Last accessed July 21, 2022).*

3.3     Revive Superfoods' products are marketed (quoting from its own website) as "chef-crafted super meals that are cost-effective and ready-to-eat in minutes." The product recipes include "pre-portioned, flavorful superfood smoothies, meals, oats, soups, and falafel pops."[6]

3.4     Revive Superfoods purports to "use simple, honest ingredients that are flash-frozen at peak nutrition and are available in convenient on-the-go cups".[7]

3.5     Revive Superfoods is subscription-based and offers monthly and weekly plans that allow customers to order their choice of pre-portioned items from a set menu of options. Customers can build their own custom box and select 9, 12, or 24 cups per week or 12 or 24 cups per month.[8]

3.6     On information and belief, in addition to the Plaintiff, numerous people across the United States have developed an illness syndrome identical or substantially like the Plaintiff's after consuming Defendant Revive Superfoods' Smoothies.

3.7     On information and belief, these people have no shared exposures other than the consumption of the Revive Superfoods Smoothies.

3.8     On information and belief, all the people who fell ill after consuming Revive Superfoods Smoothies, including the Plaintiff, consumed Revive Superfoods' Mango & Pineapple Smoothie.

3.9     The ingredients used in Revive Superfoods' Mango & Pineapple Smoothie are:[9]

- Mango

- Banana

- Mango Powder

- Camu Camu

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Revive Foods, Smoothies, https://revivesuperfoods.com/about/ (Accessed July 4, 2022).

- Pineapple

- Tara Protein

- Lime Extract

3.10    According to the U.S. Food and Drug Administration, on June 19, 2022, Daily Harvest Inc., a New York based direct-to-consumer food company like Defendant Revive Superfoods, voluntarily recalled approximately 28,000 units of their French Lentil + Leek Crumbles product produced between April 28 and June 17, 2022.

3.11    The recall followed more than 470 instances of consumers experiencing illness or adverse reactions after consumption of the French Lentil + Leek Crumbles. The illnesses reported by the consumers of the Daily Harvest French Lentil + Leek Crumbles were similar to those reported by persons who fell ill after consuming Defendant Revive Superfoods' Smoothies.

3.12    The ingredients used in Daily Harvest's French Lentil + Leek Crumbles are[10]:

- French Lentil

- Butternut Squash

- Hemp Seed

- Quinoa

- Cremini

- Tara

3.13    The only common ingredient between the Daily Harvest's French Lentil + Leek Crumbles and Defendant Revive Superfoods' Mango & Pineapple Smoothie, both which caused similar gastrointestinal complications, is tara. Tara is a shrub or tree from Peru used by Daily

---

[10] Daily Harvest, https://www.daily-harvest.com/ (Accessed July 3, 2022).

Harvest and Defendant Revive Superfoods as a plant-based source of protein in their respective French Lentil + Leek Crumbles and Mango & Pineapple Smoothie products.

3.14    On July 19, 2022, Daily Harvest issued a communication to its customers advising that, following their internal investigations, they identified tara as the cause of the illnesses linked to their French Lentil + Leek Crumbles product.

3.15    On information and belief, the only product by Defendant Revive Superfoods that contained tara flour was the Mango & Pineapple Smoothie.

3.16    Revive Superfoods has since discontinued the sale of its Mango & Pineapple Smoothies, and discontinued the sale of only this specific product. Unlike Daily Harvest, however, Revive Superfoods never recalled its contaminated Mango & Pineapple Smoothies.

3.17    On information and belief, Miski Organics sourced and imported the tara flour that Defendant Revive Superfoods utilized to manufacture the smoothie products that are the subject of this action from Peruvian Nature S&S S.A.C. Peruvian Nature S&S S.A.C., in turn, obtained their tara from Molinos Asociados SAC, which was the same supplier of tara flour to Daily Harvest. The tara flour that Molinos Asociados sold to Miski Organics and the importer of Daily Harvest's tara flour was toxic and/or otherwise contaminated at the time of its import to North America and was the original source of illness in the separate outbreaks linked to the consumption of Daily Harvest French Lentils + Leeks and Revive Superfoods' Mango & Pineapple Smoothies.

**Plaintiff's Illness**

4.1    Nadia Eletribi received a shipment of Revive Superfoods Smoothies on February 8, 2022. The smoothies were a gift from a friend, as Nadia had just given birth to her newborn

baby, minor child and named Plaintiff in this action, Z.G. The shipment included Revive Superfoods' Mango & Pineapple Smoothies, which Nadia consumed for the next several days.

4.2 On February 18, 2022, Nadia experienced sharp stomach pains, which progressed to feeling cold and fatigued the next day. Nadia's symptoms worsened and, on February 20, 2022, she started experiencing sharp stomach pain, severe chills, high fever, dizziness, itchiness, extreme fatigue, nausea and vomiting. Nadia was hospitalized for her symptoms for four days, from February 21 to February 24, 2022.

4.3 Unaware of what was causing her illness, Nadia received another shipment of Defendant Revive Superfoods' Smoothies on March 8, 2022, including Defendant Revive Superfoods' Mango & Pineapple Smoothie. The Plaintiff drank the smoothies for the next several days.

4.4 Nadia's symptoms resurfaced on March 27, 2022, and progressed in severity to a point where, on March 29, 2022, she was admitted to the hospital again. Nadia spent five days in hospital this time around.

4.5 As she was still unaware what was causing her illness, Nadia resumed consumption of the Defendant Revive Superfoods' Smoothies on or about May 14, 2022. She was readmitted to the hospital for the third time on May 16, 2022, for recurring symptoms including sharp stomach pain, severe chills, high fever, dizziness, itchiness, extreme fatigue, nausea and vomiting, and dark urine. She was discharged on May 17, 2022, the following day.

4.6 All the while consuming Revive Superfoods Smoothies and falling repeatedly ill as a result, Nadia was breastfeeding her 3-week-old newborn baby, Plaintiff Z.G. As a result, Z.G. developed elevated liver enzymes.

4.7    Nadia continues to suffer from her symptoms, following her consumption of Defendant Revive Superfoods' Smoothies. Nadia has sustained serious personal injuries; suffered, and will continue to suffer, significant pain and other physical discomfort; incurred, and will continue to incur, substantial medical expenses; has missed, and will likely miss in the future, work and time necessarily dedicated to advancement in her profession; and remains at risk for future health complications with damages far in excess of $75,000.00, the jurisdictional threshold of this court.

4.8    Z.G. continues to suffer from his symptoms, following his consumption of Defendant Revive Superfoods' Smoothies. Z.G. has sustained serious personal injuries; suffered, and will continue to suffer, significant pain and other physical discomfort; incurred, and will continue to incur, substantial medical expenses; and remains at risk for future health complications with damages far in excess of $75,000.00, the jurisdictional threshold of this court.

**CAUSES OF ACTION**

**Strict Liability – Count I**

5.1    Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 4.8.

5.2    At all times relevant hereto, the Defendants prepared, manufactured, packaged, distributed, and/or sold the contaminated food product that was purchased and consumed by Plaintiff.

5.3    The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use by the intended

public, including Plaintiff, because Defendants' product was contaminated by a substance injurious to human health.

5.4     The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was delivered to the Plaintiff without any change in its defective condition. The toxic and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was used by Plaintiff in the manner expected and intended.

5.5     The Defendants owed a duty of care to the public, including Plaintiff, to prepare, manufacture, package, distribute and/or sell food that was not toxic and/or otherwise contaminated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The Defendants breached this duty.

5.6     The Defendants owed a duty of care to the public, including Plaintiff, to prepare, manufacture, package, distribute and/or sell food that was fit for human consumption, and that was safe to consume to the extent contemplated by a reasonable consumer. The Defendants breached this duty.

5.7     As a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food product that the Defendants prepared, manufactured, packaged, distributed and/or sold, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Breach of Warranty – Count II

5.8     Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.7.

5.9     The Defendants are liable to Plaintiff for breaching express and implied warranties that they made regarding their food product that Plaintiff purchased and consumed. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, the Defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food they prepared, manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise toxic, adulterated, contaminated, or injurious to health.

5.10    The toxic, adulterated, and/or otherwise contaminated food that the Defendants sold to Plaintiff would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

5.11    The toxic and/or otherwise contaminated food sold to Plaintiff was not fit for the uses and purposes intended, *i.e.,* human consumption; thus, the sale of this product to Plaintiff constituted a breach of the implied warranty of fitness for its intended use.

5.12    As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## Negligence – Count III

5.13    Plaintiff repeats and realleges all the above allegations contained in paragraphs 1.1 through 5.12.

5.14    Defendants owed to Plaintiff a duty to use reasonable care in the preparation, manufacture, packaging, distribution, and/or sale of their food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would be toxic and/or otherwise become contaminated with any dangerous pathogen. Defendants, however, breached this duty and were therefore negligent.

11

5.15    Defendants had a duty to comply with all federal, state, and local statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. Plaintiff was among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the preparation, manufacture, packaging, distribution, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

5.16    Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure that their respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, packaging, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

5.17    Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendants, however, breached this duty and were therefore negligent.

5.18    As a direct and proximate result of Defendants' negligence as described above, Plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence *Per Se* – Count IV

5.19    Plaintiff repeat and realleges all the above allegations contained in paragraphs 1.1 through 5.18.

5.20    Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the

New York State's Agriculture and Markets Law and the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

5.21    In breach of this duty, Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their preparation, manufacture, distribution, packaging and/or sale of adulterated food.

5.22    As a direct and proximate result of conduct by Defendants that was negligent *per se*, Plaintiff sustained injuries and damages in an amount to be determined at trial.

## DAMAGES

6.1    Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial. These damages include but are not limited to past and future pain and suffering, past and future damages for loss of enjoyment of life, past and future emotional distress, past and future medical and related expenses, including pharmaceutical expenses, travel and travel-related expenses, past and future lost wages, and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

7.1    Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A.    Ordering compensation for all general, special, incidental, and consequential damages suffered by Plaintiff because of the Defendants's conduct.

B.    Awarding Plaintiff costs and expenses, including reasonable attorneys' fees to the

fullest extent allowed by law; and

C.     Granting all such additional and/or further relief as this Court deems just and equitable.


DATED:     March 7, 2023


                                                    **HEISMAN NUNES & HULL LLP**

                                    By:     /s/ Paul V. Nunes
                                            Bar No.: PN2853
                                            Paul V. Nunes, Esq.
                                            69 Cascade Drive
                                            Suite 102
                                            Rochester, New York 14614
                                            Telephone: (585) 270-6922
                                            pnunes@hnhattorneys.com


                                                    **MARLER CLARK, LLP, PS**

                                    By:     /s/ William D. Marler
                                            William D. Marler, Esq., admitted *pro hac vice*
                                            The Standard Building
                                            1012 1st Avenue, Fifth Floor
                                            Seattle, Washington 98104
                                            Telephone: (206) 346-1888
                                            bmarler@marlerclark.com

                                            *Attorneys for Plaintiffs*