MARLER CLARK
THE FOOD SAFETY LAW FIRM

MARLER CLARK, INC., PS | THE STANDARD BUILDING | 1012 1st Avenue, Fifth Floor, Seattle, WA 98104-1008
TEL 1.206.346.1888 | FAX 1.206.346.1898 | EMAIL marler@marlerclark.com | WEB marlerclark.com

**WILLIAM D. MARLER**
**WRITER'S DIRECT LINE**
**(206) 346-1890**
**BMARLER@MARLERCLARK.COM**

July 6, 2023

Hon. Pamela K. Chen, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*Re: Nadia Eletribi, individually and on behalf of her minor son, Z.G. v. Revive Organics, Inc., et al., 1:22-cv-04362-PKC-SJB*

Dear Judge Chen,

We are counsel for plaintiff Nadia Eletribi and her minor son Z.G. We write to you in opposition to Defendant Molinos Asociados SAC's request for leave to file a motion to dismiss for lack of personal jurisdiction pursuant to FRCP 12(b)(2). This application is without merit, as Molinos has creatively represented the breadth of its contacts within the State of New York and has conveniently omitted discussion of relevant case law that would confirm this Court's jurisdiction over Molinos.

We also write to you in opposition to Defendant Peruvian Nature S&S S.A.C.'s request for leave to file a motion to dismiss pursuant to FRCP 12(b)(2) and (5). Peruvian Nature's request is premature because Plaintiff is in the process of effectuating service of process on Peruvian Nature under the IACAP, Peruvian Nature has yet to substantively appear before this Court (aside from its filing of a notice of appearance on May 31, 2023), and Plaintiff has not had the benefit of any substantive discovery from the four defendants in this case.[1] For these reasons and those discussed below, we ask that this Court deny Molinos's and Peruvian Nature's respective requests to file motions to dismiss.

**Molinos Asociados SAC**

Molinos argues that it is not subject to jurisdiction under New York's long-arm statute, CPLR 302. We disagree.

CPLR 302(a)(1) provides that a court may exercise personal jurisdiction over any non-domiciliary "who in person or through an agent… transacts any business within the state or contracts anywhere to supply goods or services in the state." As New York's Appellate Division

[1] Specifically, Plaintiff has not received any document production from Peruvian Nature, Miski Organics, or Molinos Asociados SAC to date. As for Revive Superfoods, they have only produced 193 pages outside of their initial disclosures.

instructively points out, "The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions…. To satisfy the second prong, the statute requires an 'articulable nexus' or 'substantial relationship' between the cause of action sued upon, or an element thereof, and the defendants' business transactions in New York. (Citations omitted.) Importantly, '[t]his inquiry is relatively permissive, and does not require causation.' (Citations omitted.) Therefore, jurisdiction under CPLR 302(a)(1) 'is proper even though a defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Aybar v. US Tires & Wheels of Queens, LLC*, 211 A.D.3d 40, 48-49 (2d Dept 2022).

Molinos incorrectly claims that it "does not regularly conduct business in New York, has no distributors in New York" and never "took any actions in New York or purposefully directed its activities at New York in a manner that would subject it to personal jurisdiction." But in fact, Molinos has transacted substantial business in New York State and knew it was servicing at least one significant New York customer, namely Daily Harvest, Inc.

Daily Harvest marketed, sold, and distributed a tara-containing product called French Lentil & Leek Crumbles, which sickened hundreds in a food-borne illness outbreak simultaneous to that of Revive Superfoods. This precipitated numerous personal injury actions (50+) against Daily Harvest, which are currently pending before Judge Cote in the Southern District of New York.[2] Daily Harvest received its tara flour from a company named Smirk's Ltd. Smirks's tara flour supplier was none other than Molinos.

In its first purchase order to Molinos,[3] Smirks instructed Molinos that its tara flour "must match Daily Harvest spec" and to "work with Janet Chan from Kesco for ISF and shipping docs." The purchase order lists Kesco Logistics as having a New York address, specifically 20 East Sunrise Hwy, Suite #308, Valley Stream, NY 11581. The bill of lading[4] lists Molinos as the shipper/exporter, Smirks as the consignee, Kesco Logistics as the party to be notified, and Sobel Network Shipping Co., 100 North Centre Avenue, Suite #302, Rockville Centre, NY 11570, as the address of delivery. In an email to DHL about shipment delays, Walter Mollinedo, a Molinos's employee, copied Amna Rauhullah and Julie Weiss, two employees of Daily Harvest.[5] In an email to Mollinedo and Herbert Telge (Molinos's CEO), Dean Soicher, a Smirks employee, wrote: "Daily Harvest did accept the kill step validation, so we don't have to sterilize product, so we may bring future orders to the NY port. Please let us know our new lead time and current transit times to the NY port."[6] In an undated presentation,[7] Molinos states, "We accepted Daily Harvest

---

2 *See Albright v. Daily Harvest et al.,* Index Number 1:22-cv-05987-DLC and related cases.
3 Attached as Exhibit 1.
4 Attached as Exhibit 2.
5 Attached as Exhibit 3.
6 Attached as Exhibit 4.
7 Attached as Exhibit 5 (see pgs. 18 and 25).

Specifications through Tracegains webpage." This webpage lists Daily Harvest as their "customer" and Daily Harvest's address as 99 Hudson 11th Floor, New York City, New York 10013.[8] [9]

Since the inception of its business relationship with Smirks, Molinos knew that it was, in fact, servicing a New York company. This fact stands in stark contrast to Molinos' statements that its contacts with New York are "so remote, attenuated and incidental that hailing (*sic*) it into court in New York would offend traditional notions of fairness and due process." In truth, Molinos, in its service of Daily Harvest, interfaced with at least three New York companies: Daily Harvest directly, Kesco Logistics, and Sobel Shipping Co. In view of the above documented facts, this Court has jurisdiction over Molinos under CPLR 302(a)(1).

Additionally, Molinos is subject to this court's jurisdiction under CPLR 302(a)(3)(ii). As the New York Court of Appeals has stated, jurisdiction over a non-domiciliary under this provision "rests on five elements: First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that the defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214-215 (2000). Moreover, regarding the fourth element, the Court of Appeals stated "the defendant need not foresee the specific event that produced the alleged injury. The defendant need only reasonably foresee that any defect in its product would have direct consequences within the State." *Id.* at 214-215. All five of these requirements are met.

The critical events giving rise to the Daily Harvest lawsuits mentioned above were Molinos's export of tara flour to Smirks (a Colorado company), Smirks supplying the flour to Stone Gate Foods (a Minnesota company), Stone Gate Foods manufacturing the Crumbles to be sold by Daily Harvest, and Daily Harvest (a New York company) selling the Crumbles to people across the country. These transactions led to hundreds being injured, many of them New York residents. As demonstrated above, Molinos knew it was servicing a New York company, and could reasonably foresee that any defect in its product would have direct consequences within the State. Moreover, Molinos derives substantial revenue from international commerce, with annual revenues more than $10 million USD.[10]

Personal jurisdiction over Molinos also comports with constitutional due process requirements. Molinos' contacts with the State of New York are ample and are sufficiently related to Plaintiff's claims (as Molinos is the source of two serious food-borne illness outbreaks).

---

8 Attached as Exhibit 6.

9 These facts were developed without the benefit of any discovery of Molinos. It is reasonable to conclude that discovery may reveal even more business contacts between Molinos and New York entities. At the same time, Plaintiff's investigation has already uncovered sufficient facts to merit a finding of jurisdiction over Molinos before this Court.

10 In an email exchange dated August 25, 2022, Paola Pastor Podesta, a Molinos employee, responds to FDA officer Tara M. Mussatto's question, "Are annual sales from your company and all affiliated companies greater than $10 million USD (average annual sales for last 3 years)?" with "Yes."

Accordingly, the exercise of personal jurisdiction over Molinos does not offend the traditional aims of fair play and substantial justice.

The Supreme Court in *Daimler* stated clearly that a corporation is "at home" only in the states in which it is incorporated and has its principal place of business. *Daimler AG* v. *Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746 (2014). However, *Daimler* and the litany of other federal jurisprudence discussing personal jurisdiction have also stated that specific jurisdiction may cover defendants less intimately connected to a forum state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, _ U.S. _, 141 S. Ct. 1017, 1024 (2021). Molinos has conveniently omitted discussion of any of the Supreme Court's *International Shoe* progeny, and specifically *Ford*, in which the Court clarified that no precedent of the Court requires a strict causal relationship between the defendant's contacts with the forum state and the litigation. *Id.* at 1026. Rather, the litigation must "relate to" the defendant's contacts, or "purposeful availment" of the forum state as a market. *Id.*

While Molinos claims to the contrary, its contacts with New York State are plentiful, purposeful, and clearly related to the harm suffered by the plaintiff. Molinos knew that the largest known end user of the very same product (tara flour) that harmed the plaintiff in this action was a New York corporation, namely Daily Harvest. Molinos specifically tailored its product to meet the requirements of that New York company and did so knowing who the direct beneficiary of its efforts would be. Further, Molinos had contact with New York importers and distributors to make its product available to Daily Harvest.

Molinos also solicited help from others, including the U.S.-based Smirks, to expand use of tara flour across the nation, including New York. Toward that end, Molinos communicated and dealt with not only Canadian entities like Revive Superfoods but New York entities, like Daily Harvest—both national retailers that ultimately sold food products containing Molinos's toxic flour to the New York market. Molinos should have expected this behavior would make it subject to the protection and benefit of New York laws, as well as its system of justice. Collectively, these actions render Molinos subject to personal jurisdiction in New York. Accordingly, Plaintiff requests that this Court deny Molinos' request for leave to file a motion to dismiss.

**Peruvian Nature S&S S.A.C.**

Plaintiff also requests that this Court deny Peruvian Nature's request for leave to file a motion to dismiss.

FRCP 4(f) directs how to effect service on an individual in a foreign country. An individual may be served at a place not within any judicial district of the United States "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." FRCP 4(f)(1). While Peru is not a signatory to the Hague Convention, it is a signatory to another multi-lateral treaty: the Inter-American Convention on Letters Rogatory and Additional Protocol (hereinafter "IACAP").

Plaintiff is currently in the process of formally serving Peruvian Nature under the IACAP. Because service under the IACAP may take from 6 months to a year, Plaintiff also effectuated personal service on Peruvian Nature so that Peruvian Nature could be apprised, earlier rather than later, of the ongoing litigation (though informally). Because Plaintiff has yet to formally serve Peruvian Nature under the IACAP, Peruvian Nature's request for leave to file a motion to dismiss pursuant to FRCP 12(b)(5) is premature. Thus, Plaintiff requests that this Court deny Peruvian Nature's request to file a motion to dismiss on these grounds.

Also, a plaintiff need only make a *prima facie* showing of a sufficient jurisdictional basis to survive a challenge under FRCP 12(b)(2). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "At the pre-discovery stage, the allegations need not be factually supported." *See* 722 F.3d at 85 (explaining that an averment of facts is necessary only after discovery). Plaintiff meets this burden.

In the present case, Peruvian Nature obtained tara flour from Molinos, a company with known ties to Daily Harvest, a New York company. As alleged in Plaintiff's complaint, Peruvian Nature exports its food products worldwide, including tara to the United States. On its website, Peruvian Nature boasts that it can "deliver to wherever you are around the globe" and that tara protein powder is one of its flagship products. Peruvian Nature also attends tradeshows across the U.S., presumably to promote its products within the U.S. market and to solicit U.S.-based business.

These activities are like those alleged against Molinos by Plaintiffs in the Daily Harvest litigation referenced above. As previously discussed, the plaintiffs in those lawsuits later discovered, through discovery produced by Smirks and Daily Harvest,[11] that Molinos knew it was servicing at least one New York corporation, namely Daily Harvest, and took deliberate actions to service the company. But for this discovery, the plaintiffs would not have discovered this and other critical pieces of information that were necessary to establish personal jurisdiction over Molinos.

For these reasons, Plaintiff requests that this Court also deny Peruvian Nature's request to file a motion to dismiss for lack of jurisdiction and allow Plaintiff to have the same opportunity for discovery in this case.

Respectfully Submitted,

**MARLER CLARK, INC., PS**

By: /s/ William D. Marler
William D. Marler, Esq. (admitted *pro hac vice*)

---

[11] *See* attached Exhibits 1-6.

1012 1st Avenue, Fifth Floor
Seattle, WA 98104
bmarler@marlerclark.com

**HEISMAN NUNES & HULL LLP**

By: /s/ Paul V. Nunes
Paul V. Nunes, Esq. (Bar No.: PN2853)
69 Cascade Drive, Suite 102
Rochester, New York 14614
pnunes@hnhattorneys.com

*Attorneys for the Plaintiffs*

cc: All counsel via ECF notification