UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NADIA ELETRIBI, individually and on behalf of her minor son, Z.G., <br><br> Plaintiff, <br> -against- <br><br> REVIVE ORGANICS, INC. d/b/a REVIVE SUPERFOODS, MISKI ORGANICS SUPERFOODS, INC., PERUVIAN NATURE S&S SAC, and MOLINOS ASCOCIADOS SAC, <br><br> Defendants. | Civil Action No. 1:22-cv-04362-PKC-SJB |

**DEFENDANT PERUVIAN NATURES' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND
<u>AMENDED COMPLAINT AND ALL CROSS-CLAIMS</u>**

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendant Peruvian Nature S&S SAC*
Andrew Krinsky
Jonathan E. Temchin
1350 Broadway
New York, New York 10018
Tel.: (212) 216-8000
Facsimile: (212) 216-8001
Email: akrinsky@tarterkrinsky.com
Email: jtemchin@tarterkrinsky.com

# TABLE OF CONTENTS

                                                          **Page**

PRELIMINARY STATEMENT ................................................................................................1
BACKGROUND ..............................................................................................................................2
ARGUMENT ....................................................................................................................................4
    **I.**    LEGAL STANDARD ...................................................................................................4
          A.    Insufficient Service of Process.............................................................................4
          B.    Personal Jurisdiction ............................................................................................5
    **II.**    PLAINTIFF'S SERVICE OF PROCESS IS INSUFFICIENT.......................................5
    **III.**    THIS COURT LACKS PERSONAL JURISDICTION OVER PERUVIAN NATURE .............9
          A.    There is no General Jurisdiction Over Peruvian Nature ...............................9
          B.    There is no Specific Jurisdiction Over Peruvian Nature........................10
    **IV.**    THE CROSS-CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION...........13
CONCLUSION...............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ambassador Insurance Co. v. Truly Nolan of Am., Inc.*,
514 F. Supp. 985 (S.D.N.Y. 1981) .................................................................................................. 13

*Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.*,
978 F .Supp. 520, 523 (S.D.N.Y.1997) ........................................................................................... 11

*Daimler AG v. Bauman*,
571 U.S. 177 (2014) ......................................................................................................................... 9

*In re Graña y Montero S.A.A. Securities Litigation*,
Case No.: 17-CV-01105 (LHD) (ST) 2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ..................... 5

*Gunthorpes v. IM. Group, LLC*,
21-cv-5140 (ARR) (RML), 2023 WL 2607628 (E.D.N.Y. Mar. 23, 2023) ...................................... 8

*Huff v. Chandris SA*,
No. 93 Civ. 6685 (SS), 1994 WL 414467 (S.D.N.Y. Aug. 8, 1994) .............................................. 13

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011) ....................................................................................................................... 11

*Kerman v. InterContinental Hotels Group Resources LLC*,
20-CV-1085 (PKC) (PK), 2021 WL 930253 (E.D.N.Y. Mar. 11, 2021) (Chen, J.) ............... 5, 9, 10

*Kernan v. Kurz–Hastings, Inc.*,
175 F.3d 236 (2d Cir. 1999) ........................................................................................................... 11

*La Marca v. Pak–Mor Mfg. Co.*,
95 N.Y.2d 210 (2000) ..................................................................................................................... 10

*Moreira v. Ministerio de Economia y Produccion de la Republica Argentina*,
No. 10 Civ. 266 (LTS) (KNF), 2011 WL 7555323 (S.D.N.Y. Apr. 18, 2011) ................................ 5

*Nuevos Destinos, LLC v. Peck*,
Case No.: 3:19-cv-00045, 2019 WL 6481441 (D.N.D. Dec. 2, 2019) .................................... 5, 7, 8

*Redd v. Federal National Mortgage Assoc. (Fannie Mae)*,
No. 19-CV-1045 (PKC), 2020 WL 1536596 (E.D.N.Y. Mar. 31, 2020) (Chen, J.),
*appeal dismissed*, No. 20-1270, 2021 WL 4520640 (2d Cir. Feb. 1, 2021, *cert denied*,
142 S. Ct. 115 (2021) ....................................................................................................................... 4

*Reers v. Deutche Bahn AG*,
320 F. Supp. 2d 140 (S.D.N.Y. 2004) ............................................................................................ 12

*Sartor v. Toussaint*,
70 Fed. App'x 11 (2d Cir. 2003) ...................................................................................................... 4

*Social Enterprise LLC v. Sociedad Agricola Cato S.A.*,
 No. 15-CV-4158, 2015 WL 13743436 (E.D.N.Y. Oct. 6, 2015) ............................................................ 6

*Twin Hills Holdings, LLC v. Furling*,
 21-CV-3507 (PKC) (SJB), 2023 WL 2742303 (E.D.N.Y. Mar. 31, 2023) (Chen, J.) ....................... 5, 9

*Value Partners S.A. v. Bain & Co., Inc.*,
 No. 98 Civ. 1562 (SAS), 1998 WL 336648 (S.D.N.Y. June 22, 1998) .................................................. 6

*Yash Raj Films (USA) Inc. v. Dishant.com LLC*, No. 08-CV-2715 (ENV) (RML),
 2009 WL 4891764 (E.D.N.Y. 2009) .................................................................................................. 11

**Rules & Statutes**

28 U.S.C. § 1781 ............................................................................................................................................ 6

CPLR § 301 .................................................................................................................................................... 9

CPLR § 302 .................................................................................................................................................. 10

FRCP 4 ................................................................................................................................................... 1, 7, 8

FRCP 12 ................................................................................................................................................ 1, 4, 5

Defendant Peruvian Nature S&S SAC ("Peruvian Nature") submits this memorandum of law in support of its motion for an order: (i) pursuant to Rule 12(b)(2) and (5) of the Federal Rules of Civil Procedure, dismissing Plaintiff Nadia Eletribi's ("Plaintiff") Second Amended Complaint, dated March 7, 2023 (the "SAC") (ECF Dkt. No. 34), and the cross-claims found in Defendant Revive Organics, Inc.'s ("Revive") Answer to Second Amended Complaint, dated March 20, 2023 (ECF Dkt. No. 41), and the cross-claims found in Defendant Miski Organics Superfoods, Inc.'s ("Miski") Answer, Affirmative Defenses and Cross-Claims to Plaintiff's First Amended Complaint, dated August 8, 2023 (ECF Dkt. No. 62), and Miski's Answer, Affirmative Defenses and Cross-Claims to Revive's Cross-Claims, dated August 8, 2023 (ECF Dkt. No. 63); and (ii) granting Moving Defendant such other and further relief as the Court deems just and proper.[1]

**PRELIMINARY STATEMENT**

Peruvian Nature, a company organized under the laws of the Country of Peru with no business presence in the United States, let alone in the State of New York, was named as a party-defendant in this action on March 7, 2023, almost a full year after Plaintiff commenced the lawsuit in July 2022. On May 30, 2023, Plaintiff filed an affidavit of service with the Court, averring that Peruvian Nature had been served in Peru on April 24, 2023 by personal delivery to the assistant of Peruvian Nature's CEO and that a response to the Complaint had been due two weeks prior on May 15, 2023 (Declaration of Jonathan E. Temchin, dated August 21, 2023 (the "Temchin Dec."), Ex. F, ECF Dkt. No. 51)).

As set forth in greater detail below, the SAC should be dismissed against Peruvian Nature based on these undisputed facts. *First*, Plaintiff failed to properly serve the SAC on Peruvian Nature in Peru. It is undisputed that delivery of the SAC on Peruvian Nature's CEO's assistant in Peru does not constitute proper service under FRCP 4. Plaintiff has conceded in its response to Peruvian Nature's request for a pre-

---

[1] Miski filed its cross-claims against Peruvian Nature on August 8, 2023, after Peruvian Nature had submitted its pre-motion letter with respect to the SAC and Revive's cross-claim. Because the grounds for dismissing Miski's cross-claim are identical to the grounds for dismissal of Revive's cross-claim, Peruvian Nature includes Miski's cross-claim as part of this motion.

motion conference that this was not formal service, foreclosing any further inquiry into the manner of service. Service was improper and accordingly the SAC should be dismissed.

*Second*, there is no general or specific jurisdiction over Peruvian Nature. With respect to general jurisdiction, Peruvian Nature is not "at home" in New York because it was not formed in New York and has no offices in New York. There are no factual allegations in the SAC that would otherwise make this an "exceptional case" sufficient to confer general jurisdiction. Regarding specific jurisdiction, the SAC has no factual allegations at all connecting Peruvian Nature's business to New York; instead, Plaintiff asserts that Peruvian Nature conducts business and advertising activities in the United States as a whole, without any allegations that these activities were conducted in New York. In light of the uncontroverted facts in the Declaration of Damian Silva, dated June 6, 2023 (the "Silva Dec." or "Silva Declaration"), annexed as Exhibit A to the Temchin Dec., that Peruvian Nature does not have any connection to New York, there is no basis to find specific jurisdiction.

*Third*, because there is no jurisdictional predicate over Peruvian Nature, Miski and Revive's cross-claims against Peruvian Nature should be dismissed as well based on the authority cited herein.

## **BACKGROUND**

Plaintiff filed her original complaint on July 25, 2022 against Revive (Temchin Dec., Ex. G, ECF Dkt. No. 1), based on allegations that Plaintiff sustained injuries by consuming Revive's pineapple and mango smoothie. Plaintiff alleged that the Tara protein powder in Revive's pineapple and mango smoothie was the cause of her injuries, as opposed to the other ingredients in the product, based on a product recall of another product that caused "similar" illnesses to those suffered by Plaintiff and the only common ingredient between the two products was Tara protein powder. On December 6, 2022, Plaintiff filed a first amended complaint containing mostly identical allegations and claims, and added Miski as a party-defendant, based on allegations that Miski supplied Tara protein powder to Revive (Temchin Dec., Ex. H, ECF Dkt. No. 16). That complaint acknowledges that Miski is a Canadian company with its principal place of business located in Canada (Temchin Dec., Ex. H, ECF Dkt. No. 16, ¶ 1.5). On March 7, 2023, Plaintiff filed the SAC against Peruvian Nature, another distributor of Tara protein powder, and Defendant Molinos

Asociados SAC ("Molinos"), a manufacturer of the Tara protein powder (Temchin Dec., Ex. B, ECF Dkt. No. 34), based on allegations that Molinos sold Tara protein powder to Peruvian Nature and Peruvian Nature sold Tara protein powder to Miski.

At all times relevant herein. Peruvian Nature was and is a private closed corporation organized and existing under the laws of the country of Peru (Silva Dec., ¶ 2). Peruvian Nature is a citizen of Peru and its principal place of business is located in Lima, Peru (Silva Dec., ¶ 2). Peruvian Nature has no offices, agents or employees located in the State of New York or the United States (Silva Dec., ¶ 2). Peruvian Nature does not conduct business in the State of New York and has no distributors located in the State of New York (Silva Dec., ¶ 3). Peruvian Nature is not registered or qualified to do business in the State of New York as a foreign entity and upon information and belief is not required to be registered to do business in the State of New York as a foreign entity (Silva Dec., ¶ 3). Peruvian Nature does not pay taxes in the State of New York and does not maintain any bank accounts, personal property or real property in the State of New York (Silva Dec., ¶ 4). Peruvian Nature does not actively advertise or solicit any sales to persons located in the State of New York (Silva Dec., ¶ 4). Peruvian Nature does not have an agency, distributorship or other contractual relationship with any of the other defendants in this action that would confer jurisdiction in New York over Peruvian Nature (Silva Dec., ¶ 5).

As a Peruvian company that primarily conducts its business in the Spanish language, Peruvian Nature is generally not familiar with the United States legal system (Silva Dec., ¶ 8). On April 24, 2023, an individual left an English copy of the SAC with Peruvian Nature's CEO's assistant, who is not authorized to accept service on behalf of Peruvian Nature (Silva Dec., ¶ 8). No Spanish translation was annexed to the document (Silva Dec., ¶ 8). Peruvian Nature has not been served with any other version of the SAC (Silva Dec., ¶ 8).

Two days after purporting to serve Peruvian Nature with the SAC, on April 26, 2023, Plaintiff moved this Court for the issuance of letters rogatory (Temchin Dec., Ex. I, ECF Dkt. No. 45) and the motion was granted on April 27, 2023. On May 30, 2023, Plaintiff filed an affidavit of service with the Court, averring that Peruvian Nature had been served in Peru on April 24, 2023, three days before the letters

rogatory were issued, and indicated that a response to the SAC had been due weeks prior on May 15, 2023 (Temchin Dec., Ex. F, ECF Dkt. No. 51).  The affidavit of service states that only a copy of the "Amended Summons in a Civil Action and Second Amended Complaint for Damages" had been served and gave no indication of whether the SAC had been served in accordance with the laws of Peru.  The affidavit of service also confirms that the SAC was not personally delivered to any officer or director of Peruvian Nature; rather, it states that the SAC was served on "Daniela Ingaroca Sales, assistant and authorized to accept service for Damian Nicolas Silva Cevallos (Director-General Manager of Peruvian Nature." (Temchin Dec., Ex. F, ECF Dkt. No. 51).

Based on this factual background, the SAC and all Cross-Claims against Peruvian Nature should be dismissed.

## ARGUMENT

### I. LEGAL STANDARD

#### A. Insufficient Service of Process

"For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Redd v. Federal National Mortgage Assoc. (Fannie Mae)*, No. 19-CV-1045 (PKC), 2020 WL 1536596, at *2 (E.D.N.Y. Mar. 31, 2020) (Chen, J.) (dismissing complaint against limited partnerships and limited liability partnership where plaintiff's affidavits of service showed only that "the process served mailed by United States Postal Service a copy of the summons and complaint to each of those Defendants by certified mail") (quotations omitted), *appeal dismissed*, No. 20-1270, 2021 WL 4520640 (2d Cir. Feb. 1, 2021, *cert denied*, 142 S. Ct. 115 (2021); *see also Sartor v. Toussaint*, 70 Fed. App'x 11, 13 (2d Cir. 2003) (summary order) ("[a] judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected") (citation omitted).  "To survive a motion to dismiss for insufficient service of process under Rule 12(b)(5), the plaintiff bears the burden of establishing that service was sufficient." *Redd*, 2020 WL 1536596, at *2.

Plaintiff has failed to satisfy her burden of establish that service of the SAC on Peruvian Nature was sufficient.  The affidavit of service on file with the Court conclusively establishes that service of

Peruvian Nature in Peru through the personal assistant of Peruvian Nature's CEO is not sufficient to properly serve process on Peruvian Nature as set forth in greater detail herein.

B. **Personal Jurisdiction**

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Twin Hills Holdings, LLC v. Furling*, 21-CV-3507 (PKC) (SJB), 2023 WL 2742303, at *3 (E.D.N.Y. Mar. 31, 2023) (Chen, J.) (quotations and citations omitted). Although "Courts assume the complaint's allegations to be true when deciding a Rule 12(b)(2) motion … a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Id.* (quotations and citations omitted). Moreover, the Court will not assume the complaint's allegations to be true if they are controverted by the moving party. *Kerman v. InterContinental Hotels Group Resources LLC*, 20-CV-1085 (PKC) (PK), 2021 WL 930253, at *5 (E.D.N.Y. Mar. 11, 2021) (Chen, J.)

The SAC is devoid of any factual allegations connecting Peruvian Nature to the State of New York; indeed, as set forth herein, the Silva Declaration makes clear that Peruvian Nature has no contacts with New York and that it is not subject to jurisdiction. Accordingly, there is no jurisdiction over Peruvian Nature in this action.

II. **PLAINTIFF'S SERVICE OF PROCESS IS INSUFFICIENT**

The SAC should be dismissed because Plaintiff's service of the SAC on Peruvian Nature's CEO's assistant in Peru is not proper. The United States and Peru "are joint signatories to the Inter-American Convention on Letters Rogatory (the "Convention"), as well as the Additional Protocol to that Convention" (the "IACAP"). *Nuevos Destinos, LLC v. Peck*, Case No.: 3:19-cv-00045, 2019 WL 6481441, at *5 (D.N.D. Dec. 2, 2019). "Generally, the [Convention and IACAP] requires judicial documents to be forwarded to a state party's designated 'Central Authority'." *Moreira v. Ministerio de Economia y Produccion de la Republica Argentina*, No. 10 Civ. 266 (LTS) (KNF), 2011 WL 7555323, at * 3 (S.D.N.Y. Apr. 18, 2011); *In re Graña y Montero S.A.A. Securities Litigation*, Case No.: 17-CV-01105 (LHD) (ST) 2021 WL

4173684, n. 7 (E.D.N.Y. Aug. 13, 2021) (the Convention and IACAP "replaced the traditional letters rogatory process by creating a mechanism for service whereby the U.S. Department of Justice, serving as the U.S. Central Authority, transmits documents to a foreign central authority for service in that country"); *Value Partners S.A. v. Bain & Co., Inc.*, No. 98 Civ. 1562 (SAS), 1998 WL 336648, n. 4 (S.D.N.Y. June 22, 1998) (the Convention and IACAP "require the filing of the notice of request to appear to the 'Central Authority' of the individual country to be forwarded by the authority to the individual"); *see also* 28 U.S.C. § 1781. It is generally understood that service through the Convention and IACAP "is an arduous and time-consuming process that may take more than one year to complete." *Social Enterprise LLC v. Sociedad Agricola Cato S.A.*, No. 15-CV-4158, 2015 WL 13743436, at *1 (E.D.N.Y. Oct. 6, 2015).

There can be no serious dispute that Plaintiff did not avail itself of the procedures set forth in the Convention and IACAP to serve Peruvian Nature. The affidavit of service on file with the Court states that Peruvian Nature was served on April 24, 2023 (Temchin Dec., Ex. F, ECF Dkt. No. 51), **_two days before_** Plaintiff even moved for the issuance of letters rogatory (Temchin Dec., Ex. I, ECF Dkt. No. 45). Moreover, the affidavit of service states that only the "Amended Summons in a Civil Action and Second Amended Complaint for Damages" was served on Peruvian Nature; there is no indication that any of the materials required by the Convention and IACAP for proper service were served on Peruvian Nature.[2]

---

[2] Article 3 of the IACAP, reprinted following 28 U.S.C. § 1781, states that:

> Letters rogatory shall be accompanied by the following:
>
> a. Copy of the complaint or pleading that initiated the action in which the letter rogatory was issued, as well as a translation thereof into the language of the State of destination;
>
> b. Untranslated copy of the documents attached to the complaint or pleading;
>
> c. Untranslated copy of any rulings ordering issuance of the letter rogatory;
>
> d. Form conforming to Form B annexed to this Protocol and containing essential information for the person to be served or the authority to receive the documents; and
>
> e. Certificate conforming to Form C annexed to this Protocol on which the Central Authority of the State of destination shall attest to execution or non-execution of the letter rogatory.

It is true that the Convention and IACAP do not purport to provide the exclusive method of effecting service, but Plaintiff nevertheless failed to effect proper service under FRCP 4. Because Peruvian Nature is a foreign company organized under Peru law, FRCP 4(h)(2) applies to service and states that any corporation, partnership or association "not within any judicial district of the United States" may be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." In pertinent part, FRCP 4(f)(2) states that service may be effectuated "(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or … (C)(ii) unless prohibited by the foreign country's law, by using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." FRCP 4(f)(3) states that service may be effectuated by "other means not prohibited by international agreement, as the court orders."

The trial court in *Nuevos Destinos, LLC v. Peck*, Case No.: 3:19-cv-00045, 2019 WL 6481441, at *6 (D.N.D. Dec. 2, 2019) analyzed FRCP 4(f)(2)(A)'s application to Peru's law governing service of process. In *Nuevos Destinos*, two of the defendants were "Peruvian business entities" that moved to dismiss the complaint based on, among other things, insufficient service of process. *Id.* at *2 and *4. The trial court found that to "properly serve a defendant in an action before a court of general jurisdiction in Peru, notice of the claim must be: (1) processed by a Peruvian court; (2) delivered to a defendant's domicile; and (3) accompanied by an official translation if not originally written in Spanish." The trial court found that service under FRCP 4(f)(2)(A) was ineffective against the two Peruvian business entities, and the other Peruvian defendants, because a "Peruvian court had not processed the notarized letters the Plaintiffs' employed here, nor were the letters accompanied by Spanish translations of the summons and complaint." Here, the affidavit of service is clear in that it the Complaint was not processed by a Peruvian court prior to service or delivered to Peruvian Nature with a Spanish translation.

The trial court also found that service under FRCP 4(f)(2)(B) and 4(f)(2)(c)(ii) were inapplicable as against the two Peruvian business entities because: (i) "the Plaintiffs did not attempt to use letters rogatory under subsection B"; and (ii) "the Plaintiff did not attempt to serve the Defendants using mail

addressed and sent by a Clerk of Court's office," noting that FRCP 4(f)(2)(c)(ii) is "unavailable as a method of service for" the two Peruvian business entities." *Id.* at 6. Similarly, Plaintiff did not attempt to use the letters rogatory issued by this Court to serve Peruvian Nature—the letters rogatory were issued on April 27, 2023, three days after Plaintiff alleges to have served Peruvian Nature on April 24, 2023. And like the plaintiff in *Nuevos Destinos*, the Plaintiff here did not attempt to serve Peruvian Nature using mail addressed and sent by a Clerk of Court's office; to the contrary, Plaintiff purports to have served Peruvian Nature by delivering the Complaint "personally and in person to" an individual who was "authorized to accept service" for the director-general manner of Peruvian Nature (Temchin Dec., Ex. F, ECF Dkt. No. 51). But as noted above personal delivery of a summons and complaint on a foreign business is expressly prohibited by FRCP 4(h)(2). Accordingly, Plaintiff failed to properly serve Peruvian Nature.

In her letter opposition to Peruvian Nature's request for a pre-motion conference Plaintiff asserted that Peruvian Nature's motion is "premature" because, according to Plaintiff, she has "yet to formally serve Peruvian Nature under the IACAP" and that "personal service" on the assistant to Peruvian Nature's CEO in Peru was "informal[]." (Temchin Dec., Ex. J, ECF Dkt. No. 59, p. 5). As an initial matter, Plaintiff has not "personally served" Peruvian Nature—as set forth above, personal delivery of a summons and complaint on a foreign business is expressly prohibited by FRCP 4(h)(2).

Moreover, this contention is an acknowledgment by Plaintiff that she has not properly served Peruvian Nature. While Plaintiff attempts to disavow the affidavit of service she did file in this action (Temchin Dec., Ex. F, ECF Dkt. No. 51) and asks this Court to ignore it, "a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, we presume that the defendant was properly served with the complaint." *Gunthorpes v. IM. Group, LLC*, 21-cv-5140 (ARR) (RML), 2023 WL 2607628, at *3 (E.D.N.Y. Mar. 23, 2023).

There are contrary facts here that rebut the presumption of proper service based on the affidavit of service filed by Plaintiff, namely, that the method of service—delivery to Peruvian Nature's CEO's assistant in Peru—is not proper service under FRCP 4 as set forth in greater detail above. Accordingly, Plaintiff's service of the summons and SAC was improper and the SAC should be dismissed on that basis.

### III. THIS COURT LACKS PERSONAL JURISDICTION OVER PERUVIAN NATURE

"Personal jurisdiction of a non-domiciliary in a federal diversity case is determined by the law of the forum state in which the federal court is sitting." *Twin Hills Holdings, LLC*, 2023 WL 2742303, at *4 (quotations omitted). "New York law authorizes a court to exercise personal jurisdiction over a non-resident defendant based on either general or specific jurisdiction." *Id.* "Accordingly, the Court must look to New York's long-arm jurisdictional statutes for general and specific jurisdiction—[New York Civil Practice Law and Rules §§ 301 and 302], respectively—to determine whether it has jurisdiction. Based on this standard, there is no jurisdiction—general or specific—over Peruvian Nature.

#### A. There is no General Jurisdiction Over Peruvian Nature

"Where a plaintiff's suit is premised on the court's general jurisdiction, that is to say, it does not assert that the in-state activities of the corporate defendant gave rise to the liabilities sued on, the plaintiff must show that the corporate defendant's contacts with the forum were so continuous and systematic as to render the defendant essentially at home in the forum state." *Kerman v. InterContinental Hotels Group Resources LLC*, 2021 WL 930253, at *5 (internal quotations and punctuation omitted). "The paradigmatic forums where a corporate defendant is essentially at home are where it is incorporated and where it has its principal place of business." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 177, 126-27 (2014)). "Only in the exceptional case will a corporate defendant be essentially at home in any other jurisdiction. *Kerman*, 2021 WL 930253 at *5 (internal quotations omitted).

Plaintiff's allegations in the SAC are insufficient to establish that Peruvian Nature is "essentially at home" in New York, and so are insufficient to establish general jurisdiction. It is uncontroverted that Peruvian Nature is not incorporated under the laws of the State of New York and does not have a principal place of business in New York. There are no allegations in the SAC that Peruvian Nature has any connection to the State of New York whosoever, let alone allegations describing continuous and systematic contacts that would somehow elevate Peruvian Nature's relationship to New York to the level of "essentially at home" and make this an "exceptional case." *See*, *e.g.*, *Kerman*, 2021 WL 930253 at *5

("Plaintiff asserts that Defendant is at home in New York because … it is authorized to do business in New York and has a massive presence in the state. Even assuming that Plaintiff's assertions are true, however, they do not elevate Defendant's relationship with New York to the level of essentially at home") (internal quotations omitted). Because it is undisputed that Peruvian Nature is not "essentially at home" in New York and there are no allegations in the SAC that would make this an "exceptional case," there is no general jurisdiction over Peruvian Nature. Plaintiff did not even meaningfully argue that this Court has general jurisdiction over Peruvian Nature in her opposition to Peruvian Nature's request for a pre-motion conference (Temchin Dec., Ex. J, ECF Dkt. No. 59, p. 5).

### B. There is no Specific Jurisdiction Over Peruvian Nature

There also is no specific jurisdiction over Peruvian Nature. "Specific jurisdiction is that which arises out of or is related to the defendant's contacts with the forum. *Kerman*, 2021 WL 930253, at *2. New York's long-arm statute, New York Civil Practice Law and Rules ("CPLR") § 302(a), specifies the contacts with New York sufficient to trigger a court's specific jurisdiction over Peruvian Nature. It states that a party may be subject to a New York court's specific jurisdiction if the party: (i) "transact[s] any business within the state or contracts anywhere to supply goods or services in the state"; (ii) "commits a tortious act within the state"; or (iii) "commits a tortious act without the state causing injury to a person or property within the state" and either "regularly does or solicits business" in New York or "expects or should reasonably expect the act to have consequences in" New York.

Here, Peruvian Nature did not enter into any contracts to supply Tara protein powder to any person in New York and has not otherwise interacted with any New York person concerning the sale or distribution of New York protein powder (Silva Dec., ¶¶ 5-7). Thus, the only basis to confer specific jurisdiction over Peruvian Nature is if it "expected or should reasonably have expected that [its] action would have consequences in New York" under CPLR § 302(a)(3)(ii). Foreign and out-of-state distributors have been held amenable to product liability suits after their products were distributed to New York through third parties and caused injury within New York. *See*, *e.g.*, *La Marca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210,

214–16 (2000) (Texas manufacturer of rear-loading device subject to specific jurisdiction based on agreement with New York-based distributor that sold device to plaintiff's employer); *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 242–44 (2d Cir. 1999) (Japanese manufacturer of hot stamping press subject to specific jurisdiction based on targeting North American market generally, including New York, with its products through an "exclusive sales rights agreement" with a Pennsylvania distributor).

Peruvian Nature has not entered into any distribution agreement with Miski—a Canadian company with no place of business in New York— for the distribution and sale of Tara protein powder that leads to an expectation that the Tara protein powder would be sold to or used by a New York person. Other than threadbare and conclusory statements of jurisdiction that Peruvian Nature attended trade shows in states other than New York, there are no factual allegations in the Complaint supporting the notion that Peruvian Nature's agreement with Miski somehow would lead Peruvian Nature to conclude that its product would end up in New York. New York courts routinely dismiss manufacturer and distributor-defendants for lack of personal jurisdiction on these grounds. *Kernan*, 175 F.3d at 241 ("The reasonable expectation' test … is not satisfied by '[t]he mere likelihood that a product will find its way into the forum state ….'") (quoting *Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F .Supp. 520, 523 (S.D.N.Y.1997)); *see also* Yash Raj Films (USA) Inc. v. Dishant.com LLC, No. 08—CV—2715 (ENV) (RML), 2009 WL 4891764 (E.D.N.Y. 2009) ([T]he Second Circuit requires "a discernible effort [by the defendant] to directly or indirectly serve the New York market.") (quoting *Kernan*, 175 F.3d at 241). That is because the law is well-settled that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed towards the forum state." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011) (citation omitted).

The Complaint sets forth no facts that Peruvian Nature engaged in any conduct concerning the sale or distribution of Tara protein powder purposefully directed at New York. Peruvian Nature has no offices in New York, does not pay taxes in New York, does not own property here and has not entered into any distribution agreements with any person located in New York for the sale of Tara protein powder (*see generally* Silva Dec.). Peruvian Nature does not have a single contact with New York short of an allegation

that the product in question ended up here. Any suggestion that Peruvian Nature was generally aware that Miski would sell products containing Tara protein powder to consumers in the United Stated is unavailing because a foreign defendant's contacts "with the forum state, not with the United States as whole, [] are relevant to the personal jurisdiction inquiry." *Reers v. Deutche Bahn AG*, 320 F. Supp. 2d 140, 155 (S.D.N.Y. 2004) ("Conduct directed toward the United States … cannot subject a defendant to personal jurisdiction in a particular state").

There are no allegations in the SAC regarding Peruvian Nature's alleged contact with the State of New York that would confer specific jurisdiction. Instead, Plaintiff generally alleges in the SAC that Peruvian Nature exports its food products "worldwide, including tara to the United States" and otherwise advertises its products "across the country," including at trade shows in "Las Vegas" and "Anaheim, California" (Temchin Dec., Ex. B, SAC, ¶ 1.12). But as stated above, it is contact "with the forum state, not with the United States as a whole" that is "relevant to the personal jurisdiction inquiry." *Reers*, 320 F. Supp. 2d at 155. The SAC is devoid of any allegations whatsoever connecting Peruvian Nature to the State of New York.

Plaintiff's letter in opposition to Peruvian Nature's request for a pre-motion conference confirms that there is no basis to allege that Peruvian Nature is subject to specific jurisdiction in New York. Once again, Plaintiff claimed that "Peruvian Nature obtained tara flour from Molinos, a company with known ties to Daily Harvest, a New York company" (Temchin Dec., Ex. J, ECF Dkt. No. 59, p. 5). Plaintiff also repeats its allegation that Peruvian Nature exports products worldwide and attends tradeshows in the United States, without alleging anything specific about Peruvian Nature and New York (Temchin Dec., Ex. J, ECF Dkt. No. 59, p. 5). And Plaintiff contention that discovery will establish that Peruvian Nature serviced a New York company is rank speculation and belied by the Silva Declaration. Accordingly, there is no specific jurisdiction over Peruvian Nature and the SAC should be dismissed on this basis as well.

## IV. THE CROSS-CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION

The Cross-Claims asserted by Revive and Miski against Peruvian Nature should be dismissed for all of the reasons set forth above. Assuming that the SAC is dismissed on these grounds, which it should be, Revive and Miski's Cross-Claims should also be dismissed based on the principle that when a jurisdiction-conferring claim is dismissed for insufficient service of process or lack of personal jurisdiction, dismissal of any cross-claims against the same defendant is appropriate. *See*, *e.g.*, *Huff v. Chandris SA*, No. 93 Civ. 6685 (SS), 1994 WL 414467, at *4 (S.D.N.Y. Aug. 8, 1994) ("[w]hen a defendant is dismissed from the underlying claim for lack of personal jurisdiction, the jurisdictional basis for the cross-claim against that same defendant disappears … Since there is no personal jurisdiction over [the defendants] in the underlying claim, I must dismiss the cross-claim as well as the underlying claim"); *see also Ambassador Insurance Co. v. Truly Nolan of Am., Inc.*, 514 F. Supp. 985, 988 (S.D.N.Y. 1981) (dismissal of cross-claim warranted where underlying claim was dismissed for lack of personal jurisdiction).

## CONCLUSION

Peruvian Nature respectfully requests that this Court grant this motion and dismiss Peruvian Nature from this action. Peruvian Nature was not properly served in Peru and has no presence in New York sufficient to confer jurisdiction.

Dated: New York, New York
August 21, 2023

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendant Peruvian Nature*

By: _____
Andrew Krinsky
Jonathan E. Temchin
1350 Broadway
New York, New York 10018
Tel: 212-216-8000
Email: akrinsky@tarterkrinsky.com
Email: jtemchin@tarterkrinsky.com