UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NADIA ELETRIBI, individually and on behalf of her minor son, Z.G.,

Plaintiff,

v.

REVIVE ORGANICS, INC. d/b/a REVIVE SUPERFOODS, MISKI ORGANIC SUPERFOODS, INC., PERUVIAN NATURE S&S SAC, and MOLINOS ASOCIADOS SAC,

Defendants.

Civil Action No. 1:22-cv-04362-PKC-SJB

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOLINOS ASOCIADOS SAC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

BOND, SCHOENECK & KING, PLLC
Michael P. Collins, Esq.
10 Bank Street, Suite 1120
White Plains, NY 10606
Telephone: (914) 306-7870
Facsimile: (646) 253-2301
Email: mcollins@bsk.com

Thomas A. Martin, Esq.
600 Third Avenue, 22nd Floor
New York, NY 10017
Telephone: (646) 253-2311
Facsimile: (646) 253-2301
Email: tmartin@bsk.com

*Attorneys for Defendant Molinos Asociados SAC*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 3

I. THE DECISION IN *ALBRIGHT V. DAILY HARVEST* IS NEITHER BINDING NOR RELEVANT TO THE PERSONAL JURISDICTION QUESTON BEFORE THIS COURT. ........ 3

A. The *Albright v. Daily Harvest* Decision is Not Preclusive ........ 3

B. There is No Jurisdiction Under C.P.L.R. § 302(a)(1) ........ 5

II. LACK OF JURISDICTION UNDER C.P.L.R. §302(a)(3)(ii) ........ 8

III. THE ABSENCE OF MINIMUM CONTACTS ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
304 F.3d 120 (2d Cir. 2002) .......... 7, 8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 9

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) .......... 6, 7

*Clarke Veneers and Plywood Inc. v. Mentkab Veneer & Plywood*,
No. GLR-19-1738, 2019 WL 7565450 (D. Md. Oct. 23, 2019) .......... 8

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) .......... 10

*Ikeda v. J. Sisters 57, Inc.*,
No. 14-cv-3570 (ER), 2015 WL 4096255 (S.D.N.Y. July 6, 2015) .......... 9

*J. McIntyre Machinery, Ltd. v. Nicastro*,
564 U.S. 873 (2011) .......... 10

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) .......... 10

*Licci v. Lebanese Canadian Bank, SAC*,
20 N.Y.3d 327, 960 N.Y.S.2d 695 (2012) .......... 6

*Lombardi v. Staples, Inc.*,
No. 15-cv-6158 (SJF)(AKT), 2016 WL 11509961 (E.D.N.Y. Dec. 15, 2016) .......... 9

*Piotrowicz v. Techtronic Industries North America, Inc.*,
No. 19-cv-11522 (KPF), 2022 WL 2870811 (S.D.N.Y. July 21, 2022) .......... 10

*Sole Resort, S.A., de C.V. v. Allure Resorts Management*,
450 F.3d 100 (2d Cir. 2006) .......... 7

*Tate & Lyle Tech. Ltd. v. AIDP, Inc.*,
No. 07–2050, 2007 WL 2680969 (C.D. Ill. Aug. 28, 2007) .......... 8

*Utica Mutual Ins. Co. v. American Re-Insurance Co.*,
218 A.D.2d 1283, 193 N.Y.S.3d 594 (4th Dep't 2023) .......... 4

*Winters v. Lavine*,
574 F.2d 46 (2d Cir. 1978) .......... 4

*Yih v. Taiwan Semiconductor Mfg. Co.*,
No. 21-cv-8828 (KMK), 2022 WL 1597541 (S.D.N.Y. May 19, 2022) .......... 3, 4

**Other Authorities**

C.P.L.R. ¶ 302(a)(3)(i) .......... 7

C.P.L.R. § 302(a)(1) .......... 3, 5, 7

C.P.L.R. § 302(a)(3) .......... 7

C.P.L.R. §302(a)(3)(ii) .......... 8, 9

Fed. R. Civ. P. 54(b) .......... 6

# PRELIMINARY STATEMENT

Plaintiff's opposition to Molinos' motion to dismiss for lack of personal jurisdiction is based solely on actions Molinos allegedly undertook that have no connection to either the parties in this case or the chain of events that allegedly led to this Plaintiff's injuries. Instead, Plaintiff (and codefendant Revive Organics) recite the purported facts from a separate case pending in the Southern District of New York and seek to base personal jurisdiction in this case entirely on the events in that case. Their argument is, they claim, buttressed by their exaggerated recitation of the decision in that separate case (*see Albright v. Daily Harvest, Inc.,* Pl. Ex. 2), which found personal jurisdiction over Molinos based on an entirely different set of facts.[1]

Given the complete absence of any connection between Molinos' sale of tara flour in Peru to Peruvian Nature, and the illness that allegedly occurred in New York in this case (*see Eletribi* SAC ¶¶ 1.1 to 1.3), Plaintiff does not even attempt to argue that the relevant facts from this case support jurisdiction. *See* Pl. Opp. at p. 3. Instead, the opposition relies entirely on the *Albright* facts, which is not a valid basis to impose personal jurisdiction over Molinos in this case.

In addition, in an apparent effort to garner sympathy, Plaintiff describes the alleged harm suffered not only by those who consumed the Revive Superfoods Smoothies at issue here, but also by those who consumed Daily Harvest's product (Pl. Opp. at pp. 3-5, 14, 17-18). Plaintiff conveniently omits, however, the fact that there is no valid scientific evidence linking tara flour to any illnesses (Telge Noreiga Decl. ¶¶ 14-

---

[1] Molinos maintains that the determination of personal jurisdiction over it in the *Daily Harvest* case was erroneous and takes exception to numerous findings that it believes were not supported by the record in that case. However, even if that decision is entirely correct, it is essentially irrelevant to the determination of personal jurisdiction to be made here.

16). Molinos voluntarily submitted to a "full scope" FDA inspection of its operation in Peru in November 2022, after learning that Daily Harvest's product was implicated in an illness outbreak (*id.* ¶ 15). The FDA has not provided any indication that Molinos' facility, processing procedures or tara flour product are implicated in any way in the outbreak (*id.* ¶16).

The claim that "[t]he tara flour that Molinos supplied to both Daily Harvest and Revive Superfoods was unfit for human consumption" (Pl. Opp. at p. 5) is pure speculation. The only purported evidence to which Plaintiff cites is an article that does not withstand scrutiny (*see* Pl. Opp. at p. 5 n.7).[2] The article theorizes the ingestion of a very high dose of tara flour may lead to adverse events "depend[ing] on the dose consumed." The article fails to indicate how much tara flour a human would have to consume to absorb the levels of the allegedly problematic amino acid observed in the mouse study. If Plaintiff had any real evidence that tara flour had actually caused any illnesses, it would have been loudly trumpeted here. But that has not occurred because, just as neither the Plaintiff nor the FDA have produced any scientific evidence linking tara flour to illnesses, neither the Plaintiffs nor Revive Organics can show that Molinos' sale of tara flour in Peru provides a sufficient connection to New York to support personal jurisdiction here. Accordingly, Molinos' motion to dismiss should be granted.

[2] The article, which Plaintiff discusses but did not submit, is entitled "Is Baikiain in Tara Flour a Causative Agent in the Adverse Events Associated with the Recalled Frozen French Lentil & Leek Crumbles Food Product? – A Working Hypothesis."

## ARGUMENT

### I. THE DECISION IN *ALBRIGHT V. DAILY HARVEST* IS NEITHER BINDING NOR RELEVANT TO THE PERSONAL JURISDICTION QUESTON BEFORE THIS COURT.

#### A. The *Albright v. Daily Harvest* Decision is Not Preclusive

Plaintiff argues that Judge Cote's determination of personal jurisdiction in the *Albright v. Daily Harvest* case "should be binding upon Molinos[,]" citing the doctrine of collateral estoppel (Pl. Opp at p. 11). Plaintiff cites only one case to support the proposition that "[c]ollateral estoppel applies to jurisdictional determinations, including those of personal jurisdiction." *Yih v. Taiwan Semiconductor Mfg. Co.,* No. 21-cv-8828 (KMK), 2022 WL 1597541, at *8 (S.D.N.Y. May 19, 2022) ("*Yih II*") (Pl. Opp. at 11). Although a determination as to whether personal jurisdiction exists can be the basis for collateral estoppel, the *Yih II* case is readily distinguishable and the doctrine is inapplicable here. Moreover, if Plaintiff seriously believed that the *Albright* decision was entitled to preclusive, "collateral estoppel," effect, the opposition would have focused on that outcome determinative argument. That was not done because the doctrine simply does not fit where, as here, the facts are entirely different.[3]

In *Yih II, a pro se* plaintiff sued his former employer for a second time after his initial case against the employer was dismissed for lack of personal jurisdiction (*Yih I*). *See id.* at *9. The plaintiff in *Yih II* brought a "fundamentally identical" action against the same former employer, claiming that the personal jurisdiction issue he previously

[3] Plaintiff makes the blatantly false assertion that "District Judge Cote has already determined that Molinos transacted business in New York, in accordance with C.P.L.R. § 302(a)(1), *based on the identical set of facts presented here"* (Pl. Opp. at p. 12) (emphasis added). The facts here are not remotely similar to those in *Albright*, let alone "identical."

presented in *Yih I* was not identical to the one presented in *Yih II* because new facts were alleged. *Id.* at *9-10. Judge Karas rejected the plaintiff's argument because:

> Regardless of Plaintiff's characterizations, success on any of these theories of personal jurisdiction ultimately depends on relitigating an issue that Judge Seibel has already decided, which is specifically prohibited by the doctrine of collateral estoppel. *See, e.g.*, *Winters v. Lavine,* 574 F.2d 46, 56 (2d Cir. 1978) ("In New York [collateral estoppel] bars the relitigation of any issue which would be decisive in the later action and which was litigated and decided against the litigant in the earlier action.").

*Id.* at *9. The plaintiff in *Yih II* sought a second bite at the apple and sued the same defendant based essentially on the same facts. Here, by contrast, not only is the Plaintiff different, but the factual events that led to the alleged injuries in the two cases are entirely distinct. For those reasons, collateral estoppel does not apply. *See id.* at *10 (quoting cases emphasizing significance of presence of same facts for collateral estoppel to apply); *see also Utica Mutual Ins. Co. v. American Re-Insurance Co.,* 218 A.D.2d 1283, 1284, 193 N.Y.S.3d 594, 596 (4th Dep't 2023) ("collateral estoppel will not apply to cases where the prior determination was based upon different facts").

If collateral estoppel were to apply in this case, it would mean that anyone who claimed to experience an injury linked to the consumption of tara flour in New York could force Molinos to defend itself in New York, regardless of where the tara flour was sold, shipped to or how it ended up in New York. Whether sold to Peruvian Nature in Peru, or to some entity in Australia, if tara flour somehow found its way to New York and ended up being consumed there by someone who claimed injury, personal jurisdiction would be automatic regardless of the identity of the plaintiff, the manufacturer of the final product or the unforeseeable chain of circumstances that resulted in tara flour being

consumed in New York. How such a result could ever comport with the minimum contacts "due process" standard is hard to fathom. We have found no case in which a foreign manufacturer was collaterally estopped from challenging personal jurisdiction in a subsequent, unrelated case, based upon a prior determination of jurisdiction concerning the sale of a component part or an ingredient in the relevant jurisdiction.

B. <u>There is No Jurisdiction Under C.P.L.R. § 302(a)(1)</u>

Plaintiff claims personal jurisdiction exists under C.P.L.R. § 302(a)(1) based on Molinos' sale of tara flour to Smirk's, which then sold it to Daily Harvest (Pl. Opp. at pp. 9-10). Molinos does not dispute, for purposes of this motion, that Judge Cote determined that Molinos transacted business in New York in regard to Daily Harvest. Plaintiff, however, concedes that personal jurisdiction under § 302(a)(1) requires a "substantial relationship between the transaction and the claim asserted" (Pl. Opp. at p. 8). The "transaction" in the *Daily Harvest* case was, according to Judge Cote, Molinos' sale of tara flour to Smirk's with knowledge that Smirk's customer was a New York based company, Daily Harvest (Pl. Ex. 2 at p. 10). Molinos' isolated sale of tara flour to Smirk's that Smirk's then sold to Daily Harvest is entirely unrelated to Peruvian Nature's distribution of tara flour to an entity in Canada that then sold it to Revive (SAC ¶ 3.17). Molinos' sole connection to the Revive Superfoods Smoothie product derives from a daisy chain of exchanges that began in Peru and spanned three countries and two continents with no further involvement by Molinos.

The cases Plaintiff relies upon to establish the requisite "substantial relationship" are all clearly distinguishable (Pl. Opp at pp. 12-15). Here, the business arrangement between Molinos, Smirk's and Smirk's customer, Daily Harvest, bears no relationship whatsoever to the business arrangement between Molinos and Peruvian Nature, which,

on its own, sold Molinos' tara flour to a Canadian entity that eventually sold it to another Canadian entity that then incorporated the tara flour into a product that Ms. Eletribi allegedly consumed in New York (SAC ¶¶ 1.1-1.3).

*Licci v. Lebanese Canadian Bank, SAC,* 20 N.Y.3d 327, 330-34, 960 N.Y.S.2d 695, 894-99 (2012)*,* involved as assertion of personal jurisdiction based on the presence of a correspondent bank account in New York. Regarding the second prong of § 302(a)(1), which the Court characterized as a determination of whether the plaintiff's claim "arose from" the defendant's transaction of business in New York (*id*. at 702-03), the Court found that the claim in that case had arisen as such because:

> [T]he complaint alleges that [defendant] engaged in terrorist financing by using its correspondent account in New York to move the necessary dollars.

*Id.* at 703. Thus, the pleadings in that case established a direct connection between the "repeated use" of the defendant's correspondent bank account and the cause of action on which the plaintiffs sued. *See id*. Nothing remotely similar is true here.

In *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 162-63 (2d Cir. 2010), several defendants were sued for allegedly selling knock-off counterfeit handbags of the luxury designer "Chloe" in New York. The defendants had shipped a single counterfeit Chloe handbag to New York. One individual defendant moved to dismiss for lack of personal jurisdiction. The individual's motion was granted and certified by the district court as final pursuant to Fed. R. Civ. P. 54(b). *Id.* at 163. The plaintiff appealed the individual defendant's dismissal, and the Second Circuit reversed, explaining that:

> This case involves an update to our jurisprudence on personal jurisdiction in the age of internet commerce. We hold that on the basis of the facts contained in the record and given the posture of this case on appeal, the single act

> of an out-of-state defendant employee shipping an item into New York, combined with his employer's extensive business activity involving New York, gives rise to personal jurisdiction over the employee. We arrive at our conclusion by first considering Ubaldelli's [individual defendant] single act and Queen Bee's business activity and then imputing that activity to Ubaldelli. We next discuss the application of New York's long-arm statute and conclude with the application of the Constitution's Due Process Clause.

*Id.* at 165. In *Chloe,* unlike in this case, the defendant(s) directed a specific act at New York, along with other New York focused conduct, that related to the defendants' overall "larger business plan purposefully directed at New York Consumers." *Id.* at 167. No such specific act or any larger business plan was aimed at New York by Molinos.

The other two cases Plaintiff relies upon, *Sole Resort, S.A., de C.V. v. Allure Resorts Management,* 450 F.3d 100 (2d Cir. 2006) and *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 304 F.3d 120 (2d Cir. 2002) are also readily distinguishable. The only issue in *Sole Resort* was whether prior interaction in New York between parties to an arbitration that occurred in Florida was sufficiently related to the arbitration to permit jurisdiction in New York. 304 F.3d at 101. The Second Circuit "remand[ed] the case to the district court to [consider that question] in the first instance." *Id*. *Sole Resort* provides no support for Plaintiff's claims here.

*Bank Brussels* concerned not C.P.L.R. § 302(a)(1), but C.P.L.R. § 302(a)(3). There, the district court determined that a Puerto Rican law firm sued for malpractice in New York, which had issued an opinion letter concerning collateral in Puerto Rico, was subject to long-arm jurisdiction under C.P.L.R. ¶ 302(a)(3)(i). 304 F.3d at 124. Long-arm jurisdiction was based mainly upon the law firm's "longtime maintenance of an apartment in New York [which] counted as a 'persistent course of conduct'" within the

meaning of § 302(a)(3)(i). *Id.* The district court nevertheless declined to exercise personal jurisdiction because it determined the minimum contacts standard was not met. *Id*. On appeal, the Second Circuit reiterated that the law firm's long-term "persistent" rental of the apartment in New York, coupled with its alleged tortious act in New York, was a valid predicate for long-arm jurisdiction. *Id.* at 126-27. Regarding the question of "specific jurisdiction-minimum contacts," the Second Circuit found the district court "took too narrow a view of the relevant contacts." *Id.* at 127. The court identified numerous other connections the law firm had with New York and described the picture that emerged from those connections as "that of a law firm which seeks to be known in the New York legal market, makes efforts to promote and maintain a client base there, and profits substantially therefrom." *Id.* at 128. Unlike the law firm in *Bank Brussels,* Molinos does not promote itself in New York and it has no "persistent" presence in New York that, when coupled with the sale of tara flour to Smirk's and its customer Daily Harvest, is sufficient to either confer long-arm jurisdiction or to meet the due process minimum contacts standard.[4]

## II. LACK OF JURISDICTION UNDER C.P.L.R. §302(a)(3)(ii)

Plaintiff also claims that personal jurisdiction can be asserted under C.P.L.R. § 302(a)(3)(ii) (Pl. Opp. at p. 16). Of the five elements necessary to assert jurisdiction under that section, the fourth one – that the "defendant expected or should reasonably

---

[4] Revive claims that the delivery of tara gum to a New York airport at the direction of two Molinos' clients that are not located in New York and the provision of one free sample of tara flour to an interested party who requested it in New York satisfies § 302(a)(3)(i) (Revive Opp. at p. 10). This is false. The claim here does not arise from the sale of tara gum and the delivery of a product to the location directed by a customer does not constitute purposeful availment of the privilege of doing business. *Clarke Veneers and Plywood Inc. v. Mentkab Veneer & Plywood*, No. GLR-19-1738, 2019 WL 7565450, at *5 (D. Md. Oct. 23, 2019). Sending a free sample one time also does not establish purposeful availment or persistent conduct. *Tate & Lyle Tech. Ltd. v. AIDP, Inc.,* No. 07–2050, 2007 WL 2680969, at *4 (C.D. Ill. Aug. 28, 2007).

have expected the act to have consequences in the State" – is glaringly absent here. There is not the faintest suggestion here, let alone any evidence, that Molinos' manufacture and sale of tara flour to Peruvian Nature in Peru provided reason for Molinos to expect to be named as a defendant in a case in New York based on sales by a company -- Revive Superfoods -- with which it had no dealings. C.P.L.R. § 302(a)(3)(ii) provides no basis for long arm jurisdiction here.

## III. THE ABSENCE OF MINIMUM CONTACTS

Even if Plaintiff (and Revive) were able to concoct some argument to satisfy New York's Long Arm Statute, there is no plausible basis to find that Molinos had minimum contacts sufficient to make the "assertion of personal jurisdiction comport[] with due process." *Ikeda v. J. Sisters 57, Inc.*, No. 14-cv-3570 (ER), 2015 WL 4096255, at *6 (S.D.N.Y. July 6, 2015). The due process standard "demands that defendants have 'certain minimum contacts with [the forum state][.]'" *Id*. (*quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945))*. This analysis can be summarized as follows:

> The minimum contacts inquiry, as it relates to the exercise of specific jurisdiction, "focuses on the relationship among the defendant, the forum, and the litigation." *Walden,* 134 S. Ct. at 1121 (internal quotations and citations omitted). "[T]he relationship must arise out of contacts that the 'defendant himself creates with the forum state." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985))(emphasis in original). "Due process requires that a defendant be haled into court in a forum State based on his **own affiliation** with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123 (quoting *Burger King,* 471 U.S. at 475).

*Lombardi v. Staples, Inc.*, No. 15-cv-6158 (SJF)(AKT), 2016 WL 11509961, at *5 (E.D.N.Y. Dec. 15, 2016) (emphasis added). Molinos did not itself intentionally create any contacts with Revive Superfoods in New York and it never "targeted" New York

when it sold tara flour to Peruvian Nature. *See J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. 873, 882 (2011). There is no evidence that Molinos "deliberately reached out" to New York to "exploit[ ] a market" or "enter[ed] a contractual relationship centered there." *Piotrowicz v. Techtronic Industries North America, Inc.*, No. 19-cv-11522 (KPF), 2022 WL 2870811, at *9 (S.D.N.Y. July 21, 2022) (citations omitted). As noted above, Molinos had no ability to predict that its dealings with Peruvian Nature in Peru might one day lead to it becoming a defendant in a New York lawsuit. The consumption in New York of tara flour that Molinos sold in Peru is precisely the sort of random and fortuitous contact that does not meet the standard for due process that the Supreme Court has repeatedly emphasized is necessary to comport with traditional notions of justice. *See* Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021); Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984). The required minimum contacts are not present here.

## CONCLUSION

Molinos' motion to dismiss for lack of personal jurisdiction should be granted.

Dated: September 27, 2023

BOND, SCHOENECK & KING, PLLC

By: /s/ Michael P. Collins
Michael P. Collins
Thomas A. Martin

Attorneys for Molinos Asociados SAC
10 Bank Street, Suite 1120
White Plains, New York 10606
Telephone: (914) 306-7870
Email: mcollins@bsk.com