**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

NADIA ELETRIBI, individually and on behalf of her minor son, Z.G.

Plaintiff,

vs.

REVIVE ORGANICS, INC., d/b/a Revive Superfoods, MISKI ORGANICS SUPERFOODS, INC., PERUVIAN NATURE S&S SAC, and MOLINOS ASOCIADOS SAC,

Defendants,

---------------------------------------------------------------x

Civil Action No.:
1:22-cv-04362-PKC-SJB

**REVIVE ORGANICS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO**
**MOLINOS ASOCIADOS SAC'S MOTION TO DISMISS**

## TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 3

I. THIS COURT HAS SPECIFC JURISDICTION OVER MOLINOS ..... 3

A. Molinos is Subject to Jurisdiction under the New York Long-Arm Statute ..... 4

B. This Court Has Personal Jurisdiction Under CPLR § 302(a)(1) ..... 4

1. Molinos Transacts Business in New York for Purposes of CPLR § 302(a)(1) ..... 5

2. Plaintiffs' Claims Arise From Molinos' Transaction of Business in New York ..... 7

C. This Court Has Personal Jurisdiction Under CPLR § 302(a)(3)(i) ..... 9

D. This Court Has Personal Jurisdiction Under CPLR § 302(a)(3)(ii) ..... 10

E. Jurisdiction Comports With Due Process ..... 13

1. Minimum Contacts Exist Due to Molinos' Purposeful Direction of Activities Toward the Forum which Resulted in an Injury Arising out of Molinos' Conduct. ..... 13

2. This Court's Exercise of Jurisdiction over Molinos is Reasonable Under the Circumstances. ..... 16

II. JURISDICTIONAL DISCOVERY IS WARRANTED ..... 17

CONCLUSION ..... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albino v. Glob. Equip. USA, Ltd.*,
No. 6:14-cv-06519(MAT), 2016 WL 4395920 (W.D.N.Y. Aug. 18, 2016) ....................11

*Albright v. Daily Harvest, Inc.*,
No. 22cv5987 (DLC), 2023 WL 5509310 (S.D.N.Y. Aug. 25, 2023)....................6, 7, 14, 15

*Am. BankNote Corp. v. Daniele*,
45 A.D.3d 338 (1st Dep't 2007) ....................13

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
480 U.S. 102 (1987)....................15, 16, 17

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
305 F.3d 120 (2d Cir. 2002)....................3, 10

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)....................7

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)....................14

*Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.*,
675 F. Supp. 1439 (S.D.N.Y. 1987)....................12

*Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC*,
No. 20 Civ. 7351 (AJN), 2021 WL 3423253 (S.D.N.Y. Aug. 5, 2021) ....................3

*Burger King Corp. v. Rudzewicz*,
105 S. Ct. 2174 (1985)....................14

*Cable News Network, L.P. v. GoSMS.com, Inc.*,
2000 WL 1678039 (S.D.N.Y. Nov. 6, 2000)....................12

*City of New York v. A-1 Jewelry & Pawn*,
501 F.Supp. 2d 369 (E.D.N.Y. 2007) ....................12

*Clarke Veneers and Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*,
2019 WL 7565450 (D. Mar. Oct. 23, 2019) ....................9

*D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
29 N.Y.3d 292 (2017) ....................4

*Daou v BLC Bank*, S.A.L.,
2021 WL 1338772 (S.D.N.Y. Apr. 9, 2021)....................9

*Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*,
7 N.Y.3d 65 (2006)....................5

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001)....................3

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
141 S. Ct. 1017 (2021)....................14, 16

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005)....................5

*Ikeda v. J Sisters 57, Inc.*,
No. 14-cv-3570 (ER), 2015 WL 4096255 (S.D.N.Y. July 6, 2015)....................18

*Ingraham v. Carroll*,
90 N.Y.2d 592 (1997)....................13

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)....................15

*Matter of James v. iFinex Inc.*,
185 A.D.3d 22 (1st Dep't 2020)....................5

*LaMarca v. Pak-Mor Mfg. Co.*,
95 N.Y.2d 210 (N.Y. 2000)....................11

*Lawson v. Full Tilt Poker Ltd.*,
930 F. Supp. 2d 476 (S.D.N.Y. 2013)....................12

*Licci v. Lebanese Canadian Bank*,
20 N.Y.3d 327 (2012)....................7, 8

*MacDermid, Inc. v. Deiter*,
702 F.3d 725 (2d Cir. 2012)....................3

*Minnie Rose LLC* v. *Yu*,
169 F. Supp. 3d 504 (S.D.N.Y. 2016)....................3

*Palmer v. Cora Italian Specialties, Inc.*,
No. 1:20-CV-398, 2022 WL 675707 (N.D.N.Y. Mar. 7, 2022)....................6

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
16 N.Y.3d 295 (2011)....................3, 10

*Reynolds v. Aircraft Leasing*,
2002 WL 31748824 (N.Y. Sup. Ct. Oct. 30, 2002) ....................10

*Rushaid v. Pictet & Cie*,
28 N.Y.3d 316 (N.Y. 2016) ....................5

*Sacco v. Reel-O-Matic, Inc.*,
183 A.D.3d 567 (2nd Dep't 2020) ....................11, 12

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006)....................7, 8

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir. 2010)....................4

*State Farm Fire & Cas. Co. v. Swizz Style, Inc.*,
246 F. Supp. 3d 880 (S.D.N.Y. 2017)....................11, 16, 17

*Tate & Lyle Tech. Ltd. v. AIDP, Inc.*,
2007 WL 2680906 (C.D. Ill., Aug. 28, 2007)....................9

*Walden v. Fiore*,
571 U.S. 277, 134 S. Ct. 1115 (2014)....................14

*Williams v. Beemiller, Inc.*,
33 N.Y.3d 523 (2019) ....................4

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)....................15

*Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*,
No. 2:17-cv-04377 (ADS)(ARL), 2018 WL 1832930 (E.D.N.Y. Apr. 17, 2018) ....................13

**Other Authorities**

CPLR § 302....................3, 4, 6

CPLR § 302(a)(1) .................... *passim*

CPLR § 302(a)(3)(i)....................9, 10

CPLR § 302(a)(3)(ii)....................10, 11, 12, 13

Fed. R. Civ. P. 12(b)(2)....................3

Defendant, Revive Organics, Inc., ("**Revive**") by and through its undersigned attorneys, Cozen O'Connor, hereby submits its Memorandum of Law in Opposition to Defendant Molinos Asociados SAC's ("**Molinos**") Motion to Dismiss for lack of personal jurisdiction ("**Motion**").

## INTRODUCTION

This action arises from the consumption of a food product which allegedly contained contaminated and/or adulterated tara flour. Molinos supplied the allegedly contaminated tara flour which was used as an ingredient in a food product manufactured and sold by Revive. According to the allegations of the operative Complaint, the contaminated tara flour caused a foodborne illness outbreak across the United States. Molinos also supplied the same tara flour to another entity, Daily Harvest, Inc. ("**Daily Harvest**"), a New York company, which resulted in an alleged separate foodborne illness outbreak across the United States. Molinos is presently defending lawsuits involving the sales of tara flour to Daily Harvest in the Southern District of New York. *See Albright v. Daily Harvest, Inc.*, No. 22cv5987 (DLC), 2023 WL 5509310 (S.D.N.Y. Aug. 25, 2023).

Molinos has taken the position in its Motion that, despite having sold its tara flour to New York entities and having allegedly caused injuries to New York residents who consumed the tara flour in New York, it is not subject to specific personal jurisdiction in New York. As this brief will demonstrate, Molinos' conduct is sufficiently purposeful and is directly related to Plaintiffs' claims and Revive's cross-claims such that it is subject to specific personal jurisdiction in New York.

For these reasons, and as fully discussed below, the Court should deny Molino's Motion.

## FACTUAL BACKGROUND

Plaintiff Nadia Eletribi ("**Eletribi**") filed the Second Amended Complaint ("**SAC**") on behalf of herself and her minor son (collectively, "**Plaintiffs**") alleging that she sustained personal injuries from her consumption of tara flour, an ingredient supplied by Molinos and used in the

manufacture of Revive's Pineapple and Mango Smoothie (the "Product"). *See* SAC, ¶¶ 1.3, 1.13, 1.14, 4.7, 4.8. Eletribi alleges that, on February 8, 2022, she received a shipment of the Product as a gift from a friend. *Id.* ¶¶ 4.1. Eletribi pleads that she consumed the Product and became ill on February 18, 2022. *Id.* ¶¶ 4.2. Thereafter, Eletribi claims that she received another shipment of the Product on March 8, 2022, which allegedly caused her to be hospitalized on March 29, 2022. *Id.* ¶¶ 4.3, 4.4. Eletribi claims to have consumed the Product again on or about May 14, 2022 and was allegedly readmitted to the hospital for a third time on May 16, 2022, for various gastrointestinal complications. *Id.* ¶¶ 4.5. Plaintiffs allege that the tara flour supplied by Molinos was toxic and/or contaminated and caused Plaintiffs' injuries. *Id.* ¶¶ 1.3, 3.17. According to the SAC, Plaintiffs have sustained serious personal injuries and continue to suffer from adverse health complications. *Id.* ¶¶ 4.7, 4.8.

Molinos is a Peruvian company that is a "processor and distributor of tara products." *Id.* ¶¶ 1.14. Molinos sold the tara flour to Defendant Peruvian Nature S&S SAC ("**Peruvian Nature**") who "exports its food products worldwide, including tara, to the United States." *Id.* ¶¶ 1.12. Peruvian Nature then sold the tara flour to Miski Organics Superfoods, Inc. ("**Miski**"), a Canadian company, who then sold the tara flour to Revive, a Canadian corporation, which then incorporated it into the Product. *Id.* ¶¶ 1.4-1.9.

The SAC also alleges that, on June 19, 2022, Daily Harvest voluntarily recalled its products containing tara flour following more than "470 instances of consumers experiencing illness or adverse reactions after consumption" of Daily Harvest's products containing tara flour. *Id.* ¶¶ 3.10-3.17. Molinos was the "same supplier of tara flour to Daily Harvest" which was "the original source of illness in the separate outbreaks linked to the consumption of Daily Harvest French Lentils + Keels and Revive['s] [Product]. *Id.* ¶¶ 3.10, 3.17. According to the SAC, the tara flour

supplied to Daily Harvest also caused various personal injuries to other individuals who consumed Daily Harvest's food products and the illnesses reported "were similar to those reported by persons who fell ill after consuming" Revive's Product. *Id.* ¶¶ 3.11, 3.13, 3.17.

## LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "Prior to trial ... when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing[ ]" of jurisdiction. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *See Transport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). On a motion pursuant to Rule 12(b)(2), courts may rely upon materials that are outside the pleadings. *See Minnie Rose LLC* v. *Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016); *DiStefano*, 286 F.3d at 84. "The Court will 'construe all pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.'" *See Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC*, No. 20 Civ. 7351 (AJN), 2021 WL 3423253, at *2 (S.D.N.Y. Aug. 5, 2021) (internal brackets omitted) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

## ARGUMENT

### I. THIS COURT HAS SPECIFC JURISDICTION OVER MOLINOS

Under New York law, personal jurisdiction over a foreign defendant is proper if "the action is permissible under the long-arm statute (CPLR § 302) and the exercise of jurisdiction comports

with due process." *See Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 528 (2019) (citation omitted); *see also Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.") (citation omitted).

**A. Molinos is Subject to Jurisdiction under the New York Long-Arm Statute**

New York's long-arm statute provides, in pertinent part:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or …
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or …

*See* N.Y. CPLR § 302(a).

**B. This Court Has Personal Jurisdiction Under CPLR § 302(a)(1)**

CPLR § 302(a)(1) confers personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) the defendant must have "transact[ed] business in New York or contract[ed] to supply goods or services in New York"; and (2) the claim asserted must "arise from" that business activity. *See D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 297 (2017); *see*

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005); *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (N.Y. 2016).

1. Molinos Transacts Business in New York for Purposes of CPLR § 302(a)(1)

Under CPLR § 302(a)(1), a single transaction in New York is sufficient to invoke jurisdiction if it was "purposeful." *See Grand River*, 425 F.3d at 166; *Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (2006) ("proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted"); *see also Matter of James v. iFinex Inc.*, 185 A.D.3d 22, 29 (1st Dep't 2020) ("proof of one transaction is sufficient to invoke jurisdiction" if defendant's actions "were purposeful and there is a substantial relationship between the transaction and the claim asserted") (citation omitted).

Here, the SAC alleges, and Molinos does not dispute, that it has sold its tara flour to Smirk's Ltd. ("**Smirk's**") who then sold it to Daily Harvest, a New York entity. *See* SAC ¶¶ 3.10-3.13; *see* Declaration of Herbert Noreiga attached to Motion ("**Decl.**") ¶¶ 20-21. Indeed, Molinos admits that it entered into a contractual relationship with Smirk's and was informed that it was servicing a New York entity when it was selling its products to Smirk's. Decl. ¶¶ 21. Furthermore, even without the benefit of discovery, the evidence suggests that Molinos had to meet certain product specifications provided by Smirk's before it shipped its products to Daily Harvest. *See* Smirk's Purchase Order dated Nov 30, 2021, attached as Exhibit 3 to Plaintiff's Opposition to Molinos' Motion to Dismiss ("**Plaintiff's Opposition**") (instructing Molinos that its tara flour "must match Daily Harvest spec" and to "work with Janet Chan from Kesco for ISF and shipping docs.")); *see* Molinos' presentation, attached as Exhibit 7 to Plaintiff's Opposition (stating that "We accepted

Daily Harvest Specifications through Tracegains webpage."); *see* Tracegains Webpage, attached as Exhibit 8 to Plaintiff's Opposition (listing Daily Harvest as their "customer" and its New York address as 99 Hudson, 11th Floor, New York City, New York 10013).

Molinos also admits that it has shipped its tara products on at least "five occasions to a New York port or airport in transit," that it communicated directly with a New York client, and that it sent samples of tara flour to New York. Decl. ¶¶ 8, 22-25. These facts are sufficient to show that Molinos transacts business in New York for purposes of CPLR 302. *See e.g.*, *Palmer v. Cora Italian Specialties, Inc.*, No. 1:20-CV-398 (FJS/DJS), 2022 WL 675707, at *4 (N.D.N.Y. Mar. 7, 2022).

For instance, in *Albright v. Daily Harvest, Inc.*, No. 22cv5987 (DLC), 2023 WL 5509310 (S.D.N.Y. Aug. 25, 2023), Molinos was also named as a defendant in a lawsuit alleging that it supplied contaminated tara flour that allegedly caused Plaintiff to sustain serious personal injuries. *Id.* at *1. Molinos sold the tara flour to defendant Smirk's for distribution in the United States. *Id.* Smirk's supplied the tara flour to another entity who then manufactured the food product for Daily Harvest. *Id.* The court held that jurisdiction was proper pursuant to 302(a)(1) because Molinos purposefully supplied its product to Smirk's "with the knowledge that it would be utilized in a product sold to consumers by Daily Harvest." *Id.* at *3. The court further explained that "Molinos was on notice that Daily Harvest used a New York address and that the logistics agent for the transaction, Kesco, was based in New York." *Id.*

The same reasoning applies here. Molinos knew that its tara flour was sold to a New York company for use and for sale in New York. Indeed, Molinos admits that "Smirk's ultimate customer" for the tara flour was "Daily Harvest" and that "Smirk's had previously input information into [a] program indicating that its customer's name was Daily Harvest, which had a



65681365\1

New York Address." Decl. ¶¶ 21. Molinos also admits to selling its tara products directly to New York ports and that it shipped a sample of tara flour to a customer in New York. Decl. ¶¶ 8, 22.

Molinos' conclusory assertion that its tara gum and tara flour products are distinct products are baseless. Molinos does not offer any explanation as to how or why they are different for purposes of establishing the transaction of business prong under 302(a)(1). *See e.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) (explaining that under the "Courts look to the totality of the defendant's activities within the forum to determine whether a defendant has transact[ed] business" under 302(a)(1)) (citation and quotation omitted).

Critically, however, even if the products are distinct, Molinos would still be subject to jurisdiction because it admits that it sold tara flour to Smirk's who then sold it to Daily Harvest, and Molinos knew that Daily Harvest is a New York entity. This, along with Molinos' shipment of products to a New York entity, is sufficient to demonstrate that it conducted business for purposes of CPLR 302(a)(1). *See Albright*, 2023 WL 5509310, at *3 (denying Molinos' motion to dismiss and explaining that Molinos knew that Daily Harvest was a New York company, engaged with an intermediary to sell to Daily Harvest and complied with Daily Harvest's product specifications); *see also Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 340 (2012) ("the fact that [defendant] used a New York account "dozens" of times indicates desirability and a lack of coincidence.").

2. Plaintiffs' Claims Arise From Molinos' Transaction of Business in New York

A claim "'arises from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,'" *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)), "or when 'there is a substantial relationship between the transaction and

the claim asserted.'" *Id.* (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). At the very least, there must be "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim" *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012). This inquiry is "relatively permissive" and an articulable nexus or substantial relationship exists "where at least one element arises from the New York contacts" rather than "every element of the cause of action pleaded." *Id.* at 339, 341.

For instance, in *Licci*, plaintiffs commenced a lawsuit against a foreign bank claiming that the bank assisted a terrorist organization in committing terrorist acts by wiring funds to the organization. *Id.* at 339. Plaintiffs' "sole point of contact with the United States was a correspondent banking account with AmEx in New York." *Id.* at 332. The court held that "[the bank's] use of its AmEx correspondent account to transfer money for Shahid provided money for Hizballah to carry out terrorist violence, including the 2006 rocket attacks." *Id.* at 340. The court explained that jurisdiction was proper even though "the specific harms suffered by plaintiffs flowed … from rockets[,]" because "where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Id.* at 341. Applied here, Plaintiffs allege that Molinos sold "toxic and/or otherwise contaminated" tara flour to Molinos and also to Daily Harvest, which was the "original source of illness in the separate outbreaks linked to the consumption of Daily Harvest French Lentils + Leeks and Revive Superfoods' Mango & Pineapple Smoothies." SAC ¶¶ .17. According to the allegations in the SAC, the injuries resulted from the consumption of the toxic tara flour which Molinos supplied. The SAC alleges that Molinos sold the same tara flour to Daily Harvest as it did to Revive — which caused "similar gastrointestinal complications" to the plaintiff

in Daily Harvest as it did to Plaintiff in this action. SAC ¶¶ 3.6, 3.13, 4.5. As such, Plaintiffs' claims and Revive's cross-claims are related to the Molinos' sales of tara flour into New York and supports the exercise of jurisdiction under the statute.

For these reasons, the cases cited by Molinos to contend that there is no nexus between the claims and the transactions in New York are inapposite. For example, in *Daou v BLC Bank*, S.A.L., 2021 WL 1338772 (S.D.N.Y. Apr. 9, 2021), the court held that there was no nexus because the events defendant's transactions with New York occurred in "advance of the events that prompt the plaintiffs' complaint" and all took place in Lebanon. *Id.* at *8. This is not the case here where Molinos' transactions with New York, including its sales to Daily Harvest, occurred at or near the same time frame when Plaintiffs' alleged injuries occurred. Similarly, the other cases Molinos relies on, (Motion at 14, 15), are distinguishable because there, the courts held that there was no jurisdiction over the defendants because the defendants role with the states was passive and their claims did not arise from the defendant's contacts with the states. *See, e.g., Clarke Veneers and Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, 2019 WL 7565450, at *5 (D. Mar. Oct. 23, 2019) ("[defendant's] *only contact* with Maryland is the shipment of plywood into the Port of Baltimore. This alone does not give rise to specific jurisdiction over [defendant].") (emphasis added); *Tate & Lyle Tech. Ltd. v. AIDP, Inc.*, 2007 WL 2680906, at *4 (C.D. Ill., Aug. 28, 2007) (explaining that sending a free sample to a customer did not confer jurisdiction where defendant's other contacts with the state are "unrelated to the claims at issue in this case"). Accordingly, jurisdiction is proper pursuant to CPLR 302(a)(1).

**C. This Court Has Personal Jurisdiction Under CPLR § 302(a)(3)(i)**

Jurisdiction is proper under CPLR § 302(a)(3)(i) where a defendant "commits a tortious act without the state causing injury to person or property within the state" if it "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

revenue from goods used or consumed or services rendered, in the state." Molinos' activities in New York may be satisfied even with unrelated activities for purposes of CPLR § 302(a)(3)(i). *See e.g.*, *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 126 (2d Cir. 2002) (citing cases).

Here, the SAC alleges that Molinos has committed a tortious act by supplying toxic flour which caused injury to Plaintiffs within the state. Molinos admits that it knew that its products are intended for Daily Harvest, a New York entity. This knowledge, combined with Molinos' sales of tara gum products to New York locations and its delivery of tara flour samples to a New York entity, are sufficient to establish jurisdiction under this section. *See e.g.*, *Reynolds v. Aircraft Leasing*, 2002 WL 31748824, *4 (N.Y. Sup. Ct. Oct. 30, 2002) (explaining that CPLR §302(a)(3)(i) "does not require the quantity of contacts necessary to meet the 'doing business' test for jurisdiction under CPLR 301" and only "require[s] something more than the 'one shot' single business transaction" described under CPLR 302(a)(1)") (citing *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997). For these reasons, jurisdiction is also proper pursuant to CPLR 302(a)(3)(i).

**D. This Court Has Personal Jurisdiction Under CPLR § 302(a)(3)(ii)**

Molinos is also subject to personal jurisdiction in New York under CPLR § 302(a)(3)(ii), which applies when: "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *See Penguin Grp.*, 16 N.Y.3d at 302 (2011) (citation omitted). With respect to the first three factors, the SAC alleges that Molinos, a non-domiciliary, committed a tortious act (i.e. manufacturing and/or processing adulterated tara flour) outside of New York that caused injury to Plaintiffs, New York residents, when they consumed the tara flour in the Product in New York.

Furthermore, Plaintiffs' allegations in the SAC, accepted as true, make a *prima facie* showing that the "expects or should reasonably expect" element of § 302(a)(3)(ii) is also satisfied. *See, e.g., LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214-15 (N.Y. 2000). Given that Daily Harvest is a New York entity, Molinos should have reasonably expected that its tara flour will be used in New York. Molinos should have also reasonably expected its tara products to be used in New York given that it directly shipped its products to New York. Courts have also found the fourth element satisfied when the defendant's contracts with intermediaries target sales into New York, *see e.g.*, *Sacco v. Reel-O-Matic, Inc.*, 183 A.D.3d 567, 568 (2nd Dep't 2020), and where defendants have coordinated communications and made shipping arrangements to accomplish the shipment of its products into the forum, *see Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-cv-06519(MAT), 2016 WL 4395920, at *4 (W.D.N.Y. Aug. 18, 2016). Here, Molinos admits that it entered into a business relationship with Smirk's who then sold its products to Daily Harvest, a New York entity. Molinos further admits that it knew that its products were ultimately being purchased by Daily Harvest. Molinos also concedes that it sold and shipped its tara gum products to New York and also sent samples of its products into New York. As such, Molinos should have expected that the contamination of its products would have consequences in the State. *See e.g.*, *State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880, 885, 889 (S.D.N.Y. 2017) (holding that jurisdiction was proper pursuant to CPLR § 302(a)(3)(ii) where defendant's intermediary targeted New York and defendant "should reasonably have expected" that its products could have ramifications in New York); *LaMarca*, 95 N.Y.2d at 215.

The fifth element of CPLR 302(a)(3)(ii) supports the exercise of jurisdiction here. Courts have held that no "specific dollar threshold" is required to satisfy substantial revenue. *See City of New York v. A-1 Jewelry & Pawn*, 501 F.Supp. 2d 369, 417 (E.D.N.Y. 2007); *Lawson v. Full Tilt*

*Poker Ltd.*, 930 F. Supp. 2d 476, 485-86 (S.D.N.Y. 2013) ("No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.") (citation omitted). Nor does the fifth element require that substantial revenue be derived from New York state or even the United States. *See e.g.*, *Sacco*, 183 A.D.3d at 568; *Cable News Network, L.P. v. GoSMS.com, Inc.*, 2000 WL 1678039, at *5 (S.D.N.Y. Nov. 6, 2000) (explaining that company that derived "$60,000 in revenue from its operations in Europe and Israel" was subject to jurisdiction because "[a]lthough the amount is not large," this "revenue derived from the defendants' international operations ensures that defendants' business is not local in nature"); *Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.*, 675 F. Supp. 1439, 1445-6 (S.D.N.Y. 1987).

For instance, in *Cable News Network, L.P. v. GoSMS.com, Inc.*, the court considered whether defendant, an internet company based in California and Israel, was subject to jurisdiction in New York. No. 00 Civ. 4812 (LMM), 2000 WL 1678039, at *5 (S.D.N.Y. Nov. 6, 2000). The court found relevant that the defendant derived "$60,000" in revenue from "Europe and Israel." *Id.* This revenue was sufficient to confer jurisdiction because "[defendant's] operations [were] international and in no way limited to California." *Id.*

Here, even without the benefit of any discovery, the SAC suggests that Molinos derives substantial revenue from international commerce because Molinos sells its products to international entities such as Daily Harvest. Molinos admits that it sold and shipped its products internationally and does not aver that it is a local business that does not engage in any international commerce. Indeed, Molinos' business activities are distinct from the scenario presented in *Ingraham v. Carroll*, where the court considered whether a local physician who saw patients only

in Vermont engaged in interstate commerce. 90 N.Y.2d 592, 596-97 (1997). In *Ingraham*, the court explained that the physician cannot be said to sell its services in interstate commerce "by treating unsolicited patients that travel into the physician's home State seeking health care." Id at 600. And the "physician's pool of patients, without more, [could not] convert an otherwise local practice to an interstate business activity." *Id.* at 599. Here, there is no indication at all that Molinos is a local business.

In any event, the failure to demonstrate that Molinos derives substantial revenue from international commerce does not warrant dismissal since such knowledge is generally under Molino's control. *See Ye Olde Time Keepers, Inc. v. C.R. Martin Auctioneers, Inc.*, No. 2:17-cv-04377 (ADS)(ARL), 2018 WL 1832930, at *10 (E.D.N.Y. Apr. 17, 2018) (ordering jurisdictional discovery because the "Defendant alone has evidence of whether it derives substantial revenue from interstate or international commerce.") The inquiry at this early stage of the proceeding is whether facts *may* exist to support the exercise of jurisdiction. *See e.g., Am. BankNote Corp. v. Daniele*, 45 A.D.3d 338, 340 (1st Dep't 2007). Such a showing has been made here.

Accordingly, because all five factors are met under CPLR 302(a)(3)(ii), jurisdiction over Molinos is proper pursuant to CPLR § 302(a)(3)(ii).

### E. Jurisdiction Comports With Due Process

#### 1. Minimum Contacts Exist Due to Molinos' Purposeful Direction of Activities Toward the Forum which Resulted in an Injury Arising out of Molinos' Conduct.

The United States Supreme Court has established three requirements for the exercise of specific jurisdiction over a nonresident defendant: "the defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State[,] the plaintiff's claim must arise out of or relate to the defendant's forum conduct[, and] the exercise of jurisdiction must be reasonable under the circumstances."

*Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785–86 (2017) (Sotomayor, J., dissenting) (internal citations and quotations omitted); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024-5 (2021) (same).

The court must assess whether a defendant has such minimum contacts with the forum, such that the defendant "must reasonably anticipate being haled into [court]" in New York. *Ford*, 141 S. Ct. at 1027 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The inquiry in a specific jurisdiction analysis focuses on whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024. Defendant's contact with the forum must not be "fortuitous" or "random." *Id.* at 1025. Rather, it must relate to the defendant's own volitional contact with the forum. *Walden v. Fiore*, 571 U.S. 277, 288, 134 S. Ct. 1115 (2014). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another state, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2184 (1985).

For instance in *Albright v Daily Harvest*, the court found that Molinos had sufficient minimum contacts with New York where "Molinos knew that its tara flour was to be used in a product sold by Daily Harvest; it represented that it had complied with Daily Harvest's specifications for that use; and it knew that Daily Harvest's business was located in New York." 2023 WL 5509310, at *4. Here, Molinos knew that its tara flour was to be used in food product sold by Daily Harvest and knew that Daily Harvest's business was located in New York. Molinos has followed a course of conduct that has included the direct sales and a regular flow of products to New York State. This is not a scenario where the defendant's product found its way to New York by chance or through the efforts of the customer. *See e.g., World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 100 S. Ct. 559 (1980) (holding that Oklahoma could not exercise personal jurisdiction over defendant who did not seek to serve the market directly or indirectly and the product found its way into the state through an "isolated occurrence"). To the contrary, this is conduct purposefully directed at New York that imputes knowledge that Molinos' tara products were being sold and used in New York State. Nor is this an indirect "stream of commerce" case where the contact with the state is "isolated" or the result of a national distribution scheme. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 878, 888 (2011). The evidence before the Court, even without discovery, shows direct shipments by Molinos of tara products into New York. Molinos' activities included a commercial relationship with Smirk's which included supplying Daily Harvest, a New York entity, with tara flour, and sending a sample of tara flour to a New York entity. Furthermore, the evidence suggests that Molinos also specifically designed its products for New York and this would support the "something more" and an "intent or purpose to serve the market" that the stream of commerce cases require. *See J. McIntyre*, 564 U.S. at 886, 889 (2011); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). In sum, Molinos' tara flour did not find its way to New York once or twice by mistake. Rather, it was the result of Molinos' purposeful direction of its products to the forum. Furthermore, Plaintiffs' claims with the state arise out of and relate to Molinos' contacts with the state. Indeed, in *Ford*, the court rejected the defendant's argument that a "strict causal relationship between the defendant's in-state activity and the litigation" was necessary to establish specific jurisdiction. *Id.* at 1026. The court explained that "some relationships will support jurisdiction without a causal showing." *Id.* The relatedness element is easily met here because Plaintiffs' claims and Revive's cross-claims arise out of Molinos' packaging, distribution and/or sale of tara flour. *See* SAC, ¶¶ 5.7, 5.12, 5.18, 5.22.

2. This Court's Exercise of Jurisdiction over Molinos is Reasonable Under the Circumstances.

After a plaintiff has demonstrated sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction would be reasonable. *See Asahi*, 480 U.S. at 113. With respect to reasonableness, courts consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Id.* A court must consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (internal citations and quotations omitted).

First, the burden on Molinos to defend this lawsuit in New York would be inconsequential. Indeed, "[i]n this modern era, the first prong is largely disregarded with respect to solvent corporate defendants," which Molinos appears to be. *See State Farm*, 246 F. Supp. 3d at 893. Moreover, Molinos' retention of local counsel and its current defense of lawsuits involving sales of its tara-based products to Daily Harvest demonstrate that it could easily defend a suit here.

Second, absent any other compelling reasons, there is certainly an interest for the State of New York to provide an avenue for its residents to recover for illness caused by consumption of contaminated food products in the state, and also the interest in protecting other New York residents from the same dangers. *State Farm*, 246 F. Supp. 3d at 894 ("the Court finds that the underlying product liability determinations will be far more efficient, and that consumers in New York that may be at risk from potentially faulty products will be more protected, by keeping Stadler Form in the case."). The interest to New York is particularly heightened in this case because the parties did not previously agree upon an alternative forum for litigation and New York was the location where the Plaintiffs allegedly consumed tara flour and were treated for their alleged injuries. *See Asahi*, 480 U.S. at 114. These facts are different from the situation presented in *Asahi*,

where the Court held that exercising personal jurisdiction over a Japanese corporation in California would be "unreasonable and unfair." *Id.* at 116. In *Asahi*, the corporation's only contact with the forum was a "claim for indemnification" and, thus, the court concluded that because the plaintiff was not a California resident, the forum had "diminished" legitimate interests in the dispute. *Id.* at 114–15.

Further, there is no question here that New York is a convenient and efficient forum for Plaintiffs to litigate this dispute. Plaintiffs reside in New York and the witnesses, including the doctors who have treated Plaintiffs, are located within the State of New York. Molinos has not established that there is a more convenient or effective forum in which Plaintiffs can seek relief for their alleged damages.

Judicial economy supports litigating against all parties in the same state. Granting Molinos' motion would force Revive to litigate two separate actions in separate jurisdictions and risk inconsistent judgments.

In sum, the reasonableness factors all weigh in support of exercising personal jurisdiction in New York.

## II. <u>JURISDICTIONAL DISCOVERY IS WARRANTED</u>

To the extent this Court finds the allegation in the SAC insufficient to confer jurisdiction, this Court should order Molinos to engage in jurisdictional discovery. *See e.g., Ye Olde Time Keepers v. C.R. Martin Auctioneers*, 2018 WL 1832930, *11 (E.D.N.Y. Apr. 17, 2018); *Ikeda v. J Sisters 57, Inc.*, No. 14-cv-3570 (ER), 2015 WL 4096255, at *10 (S.D.N.Y. July 6, 2015).

Courts in this district have allowed jurisdictional discovery to proceed even where the defendant's connections with the state were more attenuated than Molino's connections here. *See e.g., Ikeda*, 2015 WL 4096255, at *8 (ordering jurisdictional discovery even though there was no

evidence that "any additional products manufactured by [defendant] reached the New York market").

Here, jurisdictional discovery would allow Revive the opportunity to seek evidence regarding Molinos' participation in international commerce, its international revenue stream, its relationships/agreements with distributors, the amount of Molinos' direct shipments to New York customers and to extent that Molinos sold tara flour products into New York through other distributors.

**CONCLUSION**

Revive adopts the arguments in Plaintiffs' memorandums of law in opposition to Molinos' Motion, to the extent not inconsistent with or adverse to the arguments contained herein. For these reasons, Molinos' Motion should be denied.

Dated: New York, New York
September 11, 2023

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ Richard Fama

Richard Fama, Esq.
Joel M. Maxwell, Esq.
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
212-908-1229
rfama@cozen.com
jmaxwell@cozen.com

*Attorneys For Revive Organics*