**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
NADIA ELETRIBI, individually and on behalf of her minor son, Z.G.

Plaintiffs,

Civil Action No.: 1:22-cv-04362-PKC-SJB

vs.p

REVIVE ORGANICS, INC., d/b/a Revive Superfoods, MISKI ORGANICS SUPERFOODS, INC., PERUVIAN NATURE S&S SAC, and MOLINOS ASOCIADOS SAC,

Defendants,
---------------------------------------------------------------x

**REVIVE ORGANICS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PERUVIAN NATURE S&S SAC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. THIS COURT HAS SPECIFIC JURISDICTION OVER PERUVIAN NATURE ..... 4

A. Peruvian Nature is Subject to Jurisdiction under the New York Long-Arm Statute ..... 4

B. Peruvian Nature is Subject to Personal Jurisdiction pursuant to CPLR § 302(a)(3)(ii) ..... 5

C. Peruvian Nature is Subject to Personal Jurisdiction pursuant to CPLR § 302(a)(1) ..... 8

D. Jurisdiction Comports With Due Process ..... 9

1. Minimum Contacts Exist Due to Peruvian Nature's Purposeful Direction of Activities Toward New York through Intermediaries Which Caused Plaintiffs' Alleged Injuries ..... 9

2. This Court's Exercise of Jurisdiction over Peruvian Nature is Reasonable. ..... 12

II. JURISDICTIONAL DISCOVERY IS WARRANTED ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albino v. Glob. Equip. USA, Ltd.*,
No. 6:14-cv-06519(MAT), 2016 WL 4395920 (W.D.N.Y. Aug. 18, 2016) ............................5

*Albright v. Daily Harvest, Inc.*,
No. 22cv5987 (DLC), 2023 WL 5509310 (S.D.N.Y. Aug. 25, 2023)......................................1

*Am. BankNote Corp. v. Daniele*,
45 A.D.3d 338 (1st Dep't 2007) ..............................................................................................8

*Asahi Metal Indus. Co. Ltd. v. Superior Court*,
480 U.S. 102 (1987)...........................................................................................................12, 13

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)........................................................................................................10, 12

*Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.*,
675 F. Supp. 1439 (S.D.N.Y. 1987)...........................................................................................7

*Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC*,
No. 20 Civ. 7351 (AJN), 2021 WL 3423253 (S.D.N.Y. Aug. 5, 2021) ..................................4

*Burger King Corp. v. Rudzewicz*,
105 S. Ct. 2174 (1985)........................................................................................................10, 12

*Cable News Network, L.P. v. GoSMS.com, Inc.*,
2000 WL 1678039 (S.D.N.Y. Nov. 6, 2000)...............................................................................7

*Candelario v. Bobst N. Am., Inc.*,
No. 18-CV-6281 CJS, 2019 WL 4112179 (W.D.N.Y. Aug. 29, 2019)....................................6

*City of New York v. A-1 Jewelry & Pawn*,
501 F.Supp. 2d 369 (E.D.N.Y. 2007) .........................................................................................7

*Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*,
7 N.Y.3d 65 (2006) ....................................................................................................................8

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001)....................................................................................................3, 4

*EnviroCare Techs., LLC v. Simanovsky*,
No. 11-cv-3458, 2012 WL 2001443 (E.D.N.Y. June 4, 2012).................................................9



LEGAL\65818372\1

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
141 S. Ct. 1017 (2021) .....10, 11

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005) .....8

*Ikeda v. J Sisters 57, Inc.*,
No. 14-cv-3570 (ER), 2015 WL 4096255 (S.D.N.Y. July 6, 2015) .....13

*Ingraham v. Carroll*,
90 N.Y.2d 592 (1997) .....7

*Matter of James v. iFinex Inc.*,
185 A.D.3d 22 (1st Dep't 2020) .....9

*Lawson v. Full Tilt Poker Ltd.*,
930 F. Supp. 2d 476 (S.D.N.Y. 2013) .....7

*Licci v. Lebanese Canadian Bank*,
20 N.Y.3d 327 (2012) .....9

*MacDermid, Inc. v. Deiter*,
702 F.3d 725 (2d Cir. 2012) .....3

*Minnie Rose LLC* v. *Yu*,
169 F. Supp. 3d 504 (S.D.N.Y. 2016) .....4

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
609 F.3d 30 (2d Cir. 2010) .....5

*Sacco v. Reel-O-Matic, Inc.*,
183 A.D.3d 567 (2nd Dep't 2020) .....5, 7

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir. 2010) .....4

*State Farm Fire & Cas. Co. v. Swizz Style, Inc.*,
246 F. Supp. 3d 880 (S.D.N.Y. 2017) ..... *passim*

*Walden v. Fiore*,
571 U.S. 277, 134 S. Ct. 1115 (2014) .....10

*Williams v. Beemiller, Inc.*,
33 N.Y.3d 523 (2019) .....4

*Ye Olde Time Keepers v. C.R. Martin Auctioneers*,
2018 WL 1832930 (E.D.N.Y. Apr. 17, 2018) .....8, 13

**Other Authorities**

CPLR § 302.....4

CPLR § 302(a).....5

CPLR § 302(a)(1).....8, 9

CPLR § 302(a)(3)(ii).....5, 7, 8

Fed. R. Civ. P. 12(b)(2).....3

Defendant, Revive Organics, Inc., ("**Revive**") by and through its undersigned attorneys, Cozen O'Connor, hereby submits its Memorandum of Law in Opposition to Defendant Peruvian Nature S&S SAC's ("**Peruvian Nature**") Motion to Dismiss for lack of personal jurisdiction ("**Motion**").

## INTRODUCTION

This action arises from the consumption of a food product which allegedly contained toxic and/or adulterated tara flour. Plaintiff, Nadia Eletribi, a citizen of New York, alleges that she and her infant son sustained serious personal injuries from consuming the tara flour. Peruvian Nature sourced the tara flour from Molinos Asociados SAC ("**Molinos**") and, through another intermediary, sold it to Revive. Thereafter, Revive used the tara flour as an ingredient in a food product. According to the allegations, the contaminated tara flour caused a foodborne illness outbreak across the United States. Molinos also supplied the same tara flour to another entity, Daily Harvest, Inc., which allegedly caused another foodborne illness outbreak across United States. Molinos is presently defending lawsuits involving its sale of tara flour to Daily Harvest in Southern District of New York. *See Albright v. Daily Harvest, Inc.*, No. 22cv5987 (DLC), 2023 WL 5509310 (S.D.N.Y. Aug. 25, 2023).

Through its interaction with intermediaries that target sales into New York, Peruvian Nature intentionally and purposefully directed the tara flour into the New York. Having done so, and having generated monies from the sales of its food products in New York, Peruvian Nature cannot now assert that it did not have the expectation that it can be sued in New York. As this brief will demonstrate, Peruvian Nature's conduct is sufficiently purposeful and is related to Plaintiffs' claims and Revive's cross-claims such that it is subject to specific personal jurisdiction in New York.

For these reasons, and as fully discussed below, the Court should deny the Motion.

## **FACTUAL BACKGROUND**

Plaintiff Nadia Eletribi ("**Eletribi**") filed the Second Amended Complaint ("**SAC**") on behalf of herself and her minor son (collectively, "**Plaintiffs**") alleging that Plaintiffs sustained personal injuries from their consumption of tara flour, an ingredient supplied by Molinos and Peruvian Nature and used in the manufacture of Revive's Pineapple and Mango Smoothie (the "**Product**"). SAC, ¶¶ 1.3, 1.13, 1.14, 4.7, 4.8. Eletribi alleges that, on February 8, 2022, she received a shipment of the Product, as a gift from a friend. *Id.* ¶ 4.1. Eletribi pleads that she consumed the product and became ill on February 18, 2022. *Id.* ¶ 4.2. Eletribi claims that she thereafter received another shipment of the product on March 8, 2022 which caused her to be hospitalized on March 29, 2022. *Id.* ¶¶ 4.3, 4.4. Eletribi claims that she consumed the product again on or about May 14, 2022, and was readmitted to the hospital for a third time on May 16, 2022 for various gastrointestinal complications. *Id.* ¶ 4.5. Plaintiffs claim that the tara flour supplied by Molinos and Peruvian Nature was toxic and/or contaminated and caused Plaintiffs' alleged injuries. *Id.* ¶¶ 1.3, 3.17. According to the SAC, Plaintiff and her minor have sustained serious personal injuries and continue to suffer from adverse health complications. *Id.* ¶¶ 4.7, 4.8.

Molinos is a Peruvian company that is a "processor and distributor of tara products." *Id.* ¶ 1.14. Molinos sold the tara flour to defendant Peruvian Nature who "exports its food products worldwide, including tara to the United States." *Id.* ¶ 1.12. Peruvian Nature then sold the tara flour to Miski Organics Superfoods, Inc. ("**Miski Organics**"), a Canadian company, who then sold the tara flour to Revive, a Canadian corporation, which then incorporated it into the Product. *Id.* ¶¶ 1.4-1.9.

The SAC alleges that Peruvian Nature "not only exports its foods products worldwide, including tara to the United States, it also frequently advertises its products to potential buyers at

tradeshows across the country." *Id.* ¶ 1.12. Peruvian Nature supplied the allegedly toxic and/or contaminated tara flour to Miski Organics who "had a continuous and systematic contact with the State of New York through its distribution and sale of food products, including the tara flour that is subject of this lawsuit." *Id.* ¶¶ 1.9, 1.13. 3.17.

The SAC also alleges that, on June 19, 2022, Daily Harvest voluntarily recalled its products containing tara flour following more than "470 instances of consumers experiencing illness or adverse reactions after consumption" of Daily Harvest's products containing tara flour. *Id.* ¶ 3.10-3.17. Molinos was the "same supplier of tara flour to Daily Harvest" which was "the original source of illness in the separate outbreaks linked to the consumption of Daily Harvest French Lentils + Keels and Revive['s] [Product]. *Id.* ¶¶ 3.10, 3.17. According to the SAC, the tara flour supplied to Daily Harvest also caused various personal injuries to other individuals who consumed Daily Harvest's food products and the illnesses reported "were similar to those reported by persons who fell ill after consuming" Revive's Product. *Id.* ¶¶ 3.11, 3.13, 3.17.

## LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "Prior to trial ... when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing[ ]" of jurisdiction. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *See Transport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). On a motion pursuant to Rule 12(b)(2), courts may rely upon materials that are outside the pleadings.

*See Minnie Rose LLC* v. *Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016); *DiStefano*, 286 F.3d at 84. "The Court will 'construe all pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor.'" *See Brownstone Inv. Grp. LLC v. Bonner & Partners, LLC*, No. 20 Civ. 7351 (AJN), 2021 WL 3423253, at *2 (S.D.N.Y. Aug. 5, 2021) (internal brackets omitted) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

## ARGUMENT

### I. THIS COURT HAS SPECIFIC JURISDICTION OVER PERUVIAN NATURE

Under New York law, personal jurisdiction over a foreign defendant is proper if "the action is permissible under the long-arm statute (CPLR § 302) and the exercise of jurisdiction comports with due process." *Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 528 (2019); *see also Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.").

#### A. Peruvian Nature is Subject to Jurisdiction under the New York Long-Arm Statute

New York's long arm statute provides, in pertinent part:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or …
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> …

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or …

*See* N.Y. CPLR § 302(a).

**B. Peruvian Nature is Subject to Personal Jurisdiction pursuant to CPLR § 302(a)(3)(ii)**

Peruvian Nature is subject to personal jurisdiction in New York under CPLR § 302(a)(3)(ii), which applies when "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *See Penguin Grp.*, 16 N.Y.3d at 302 (citation omitted). With respect to the first three factors, the SAC alleges that Peruvian Nature, a non-domiciliary, committed a tortious act (i.e., selling and supplying adulterated and/or toxic tara flour) outside of New York to Miski Organics. SAC ¶ 3.17. Plaintiffs further plead that the alleged contaminated tara flour caused injury to Plaintiffs, New York residents, when they consumed the Product which contained the tara flour. *Id.* ¶¶ 1.1, 1.2, 3.17, 4.7, 4.8.

Courts have found the fourth element—that the defendant expected or should have reasonably expected the act to have consequences in New York—satisfied when the defendant's contracts with intermediaries specify that a portion of the products are sold in New York or where other intermediaries' target sales to New York consumers. *See e.g.*, *Sacco v. Reel-O-Matic, Inc.*, 183 A.D.3d 567, 568 (2nd Dep't 2020); *State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880, 889 (S.D.N.Y. 2017); *see Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-cv-06519(MAT), 2016 WL 4395920, at *4 (W.D.N.Y. Aug. 18, 2016).

The SAC alleges that Peruvian Nature "not only exports its foods products worldwide, including tara to the United States, it also frequently advertises its products to potential buyers at tradeshows across the country." SAC ¶ 1.12. Furthermore, Plaintiffs assert that Peruvian Nature supplied the allegedly toxic and/or contaminated tara flour to Miski Organics who "had a continuous and systematic contact with the State of New York through its distribution and sale of food products, including the tara flour that is subject of this lawsuit." SAC ¶¶ 1.9, 1.13. 3.17.

Based on the foregoing allegations, it is reasonable to infer that Peruvian Nature sold its products to Miski Organics, a distributor that targets New York, with the knowledge and intent that Miski Organics would sell Peruvian Nature's products to New York. To the extent Peruvian Nature targeted New York through Miski Organics, it should have known that its effect of selling the contaminated and/or toxic tara would have consequences in New York. *See State Farm*, 246 F. Supp. 3d at 885 (denying foreign defendant's motion to dismiss where defendant did not sell any products in New York but was "keenly aware of the significant sales of its products in New York"); *see Candelario v. Bobst N. Am., Inc.*, No. 18-CV-6281 CJS, 2019 WL 4112179, at *5 (W.D.N.Y. Aug. 29, 2019) ("By selling machines to the New Jersey corporation chargeable with the knowledge that one or more of them would end up in New York, [defendant], could have foreseen the potential for consequences in New York. Thus, it appears that personal jurisdiction is available under (a)(3)(ii)").

At minimum, further discovery is necessary to ascertain the extent of Peruvian Nature's link to New York, including the extent it targeted Miski Organics to sell products into New York and the extent it directed, specified, or knew that its tara products were being sold or targeted to consumers in New York.

With respect to the fifth element of CPLR § 302(a)(3)(ii), courts have held that no "specific dollar threshold" is required to satisfy substantial revenue. *See City of New York v. A-1 Jewelry & Pawn*, 501 F.Supp. 2d 369, 417 (E.D.N.Y. 2007); *Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 485-86 (S.D.N.Y. 2013) ("No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.") (citation omitted). The substantial revenue need not be derived from New York state or even the United States. *Sacco*, 183 A.D.3d at 568; *Cable News Network, L.P. v. GoSMS.com, Inc.*, 2000 WL 1678039, at *5 (S.D.N.Y. Nov. 6, 2000) (denying motion to dismiss where company derived "$60,000 in revenue from Europe and Israel"); *Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.*, 675 F. Supp. 1439, 1445 (S.D.N.Y. 1987).

In its affidavit in support of the Motion, Peruvian Nature does not aver that it is a company of a local character such that it does not engage in international commerce. *See Cable News*, 2000 WL 1678039, at *5 (S.D.N.Y. Nov. 6, 2000) (finding relevant that defendant derived revenue from international commerce and where defendant's "operations [were] international and in no way limited to California."); *see also Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997) (explaining that a local business which operated solely in one state did not engage in interstate commerce). Indeed, Peruvian Nature does not and cannot plausibly contend that its business is of a local character where, as here, there is no dispute that Peruvian Nature markets and sells its products to international companies, such as Miski Organics. SAC ¶¶ 1.11-1.13; *see* Declaration of Damian Silva, attached as Exhibit A to the Motion ("Decl.").

Moreover, any failure to demonstrate that Peruvian Nature derives substantial revenue from international commerce does not warrant dismissal at this stage of proceedings where such

knowledge is under Peruvian Nature's control. *See Ye Olde Time Keepers v. C.R. Martin Auctioneers*, 2018 WL 1832930, *11 (E.D.N.Y. Apr. 17, 2018) (ordering jurisdictional discovery because the defendant alone has evidence of whether it derives substantial revenue from interstate or international commerce.) Indeed, in its declaration in support of the Motion, Peruvian Nature does not aver that it does not derive substantial revenue from international commerce. *See generally* Decl. The inquiry at this stage is whether facts may exist to support the exercise of jurisdiction. *See Am. BankNote Corp. v. Daniele*, 45 A.D.3d 338, 340 (1st Dep't 2007). At this early stage of proceedings, there is sufficient evidence to infer that all five factors are met under CPLR § 302(a)(3)(ii). Jurisdiction over Peruvian Nature is this proper pursuant to CPLR § 302(a)(3)(ii).

### C. Peruvian Nature is Subject to Personal Jurisdiction pursuant to CPLR § 302(a)(1)

In its opposition to Peruvian Nature's Motion, Plaintiff asserts that Peruvian Nature made direct shipments of tara flour to New York. Specifically, Plaintiff contends (at p. 13-14), that "The sole bill of lading produced by Defendant Miski Organics to date states that, on December 26, 2020, Peruvian Nature (labeled as "Shipper" in the subject bill of lading) shipped, by ocean vessel, 13 bags (250 kg) of organic tara protein powder from Callao (the "Port of loading") to New York (the "Port of discharge"). The bill of lading names Miski Organics as the "Consignee" and party to be notified." (footnotes omitted). To the extent that Peruvian Nature made direct shipping arrangements of tara flour into New York pursuant to an agreement with Miski Organics, it is also subject to personal jurisdiction under CPLR § 302(a)(1). *See e.g.*, *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005); *Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (2006) ("proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's

activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted"); *see also Matter of James v. iFinex Inc.*, 185 A.D.3d 22, 29 (1st Dep't 2020) ("proof of one transaction is sufficient to invoke jurisdiction" if defendant's actions "were purposeful and there is a substantial relationship between the transaction and the claim asserted") (citation omitted); *EnviroCare Techs., LLC v. Simanovsky*, No. 11-cv-3458, 2012 WL 2001443, at *2 (E.D.N.Y. June 4, 2012) (finding "that Defendants' sale of [an] allegedly counterfeit item to Plaintiff in New York through Amazon.com amounted to transacting business in New York sufficient to establish long arm jurisdiction under C.P.L.R. 302(a)(1).").

With respect to the "arise from" prong, courts have held that the inquiry is "relatively permissive" and an articulable nexus or substantial relationship exists "where at least one element arises from the New York contacts" rather than "every element of the cause of action pleaded." *See Licci v. Lebanese Canadian Bank,* 20 N.Y.3d 327, 339, 341 (2012). According to the allegations in the SAC, Plaintiffs' claims and injuries resulted from the consumption of the tara flour which Peruvian Nature sourced from Molinos and "distributed and/or sold" to Miski Organics. SAC ¶¶ 1.13, 3.17, 5.7, 5.16, 5.17. There is "a relatedness between the transaction [i.e. Peruvian Nature's sale of tara flour into New York] and the legal claim such that the latter is not completely unmoored from the former." *Licci v. Lebanese Canadian Bank,* 20 N.Y.3d 327 at 339. Accordingly, jurisdiction is also proper pursuant to C.P.L.R. 302(a)(1).

**D. Jurisdiction Comports With Due Process**

1. Minimum Contacts Exist Due to Peruvian Nature's Purposeful Direction of Activities Toward New York through Intermediaries Which Caused Plaintiffs' Alleged Injuries.

The United States Supreme Court has established three requirements for the exercise of specific jurisdiction over a nonresident defendant: "the defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum State or have purposefully directed

its conduct into the forum State[,] the plaintiff's claim must arise out of or relate to the defendant's forum conduct[, and] the exercise of jurisdiction must be reasonable under the circumstances." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785–86 (2017) (Sotomayor, J., dissenting) (internal citations and quotations omitted); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024-5 (2021).

The court must assess whether a defendant has such minimum contacts with the forum, such that the defendant "must reasonably anticipate being haled into [court]" in New York. *Ford*, 141 S. Ct. at 1027 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The inquiry in a specific jurisdiction analysis focuses on whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024. The contact between the defendant must not be "fortuitous" or "random." *Id.* at 1025. Rather, it must relate to the defendant's own volitional contact with the forum. *Walden v. Fiore*, 571 U.S. 277, 288, 134 S. Ct. 1115 (2014). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another state, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2184 (1985).

Peruvian Nature characterizes this case as one where a product was placed into the stream of commerce and fortuitously entered New York through the acts of third-parties. *See* Motion, at p. 11-12. However, the arrival of tara flour into New York was not a mere isolated event. Indeed, Peruvian Nature does not aver as much. Peruvian Nature's contacts with New York are a result of business connections that Peruvian Nature itself established by selling to and contracting with Miski Organics who "ha[s] a continuous and systematic contact with the State of New York through its distribution and sale of food products." SAC ¶¶ 1.9, 1.13. 3.17. For instance, in *State*

*Farm Fire & Cas. Co. v. Swizz Style, Inc.*, the court held that a foreign defendant had the requisite minimum contacts with New York where its intermediary derived a substantial revenue from New York and the defendant knew that its products would be sold in New York. 246 F. Supp. 3d at 892.

Here too, the allegation that Miski Organics had a "continuous and systematic" distribution channel in New York leads to the reasonable inference that Peruvian Nature knew that its tara flour products were intended to be sold in New York and regularly flowed into the state. Through its interaction with intermediaries, Peruvian Nature intentionally and purposefully directed its products into New York. Indeed, Peruvian Nature had a reasonable expectation that its products would be sold in the State of New York by purposefully selling the tara products to Miski Organics, a well-known distributor who targeted sales of products into New York. Peruvian Nature has not attested that the sale of its tara products in New York was a random occurrence or that it undertook any efforts to limit the sale of its products to New York. This conduct strongly supports a position that there was the expectation that its food products would be purchased in the State of New York. Accordingly, Peruvian Nature purposefully availed itself of New York.

With respect to relatedness, the prong is easily met here because Plaintiffs' claims and Revive's cross-claims directly arise out of the sale of the tara flour products into New York. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024-5 (2021) (rejecting that a "strict causal relationship" is necessary to establish relatedness and explaining that the "some relationships will support jurisdiction without a causal showing."). Therefore, Peruvian Nature has the minimum contacts to support the exercise of specific jurisdiction.

2. This Court's Exercise of Jurisdiction over Peruvian Nature is Reasonable.

The exercise of jurisdiction over Peruvian Nature is also fair and reasonable under the circumstances. *Asahi Metal Indus. Co. Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987). To assess reasonableness, courts consider "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Id.* A court must consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (internal citations and quotations omitted). Although the primary concern is the burden on defendant, *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780, "the facts of each case must [always] be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 485–86.

First, the burden on Peruvian Nature to defend this lawsuit in New York would be minimal. *See State Farm*, 246 F. Supp. 3d at 893 (noting that the first prong is "largely disregarded with respect to solvent corporate defendants"). Indeed, Peruvian Nature has already retained New York counsel suggesting that it could easily defend a lawsuit here.

Second, absent any other compelling reasons, there is certainly an interest for the State of New York to provide an avenue for its residents to recover for illness caused by consumption of contaminated food products in the state, and also the interest in protecting other New York residents from the same dangers. *State Farm*, 246 F. Supp. 3d at 894 ("the Court finds that the underlying product liability determinations will be far more efficient, and that consumers in New York that may be at risk from potentially faulty products will be more protected, by keeping Stadler Form in the case."). The interest to New York is particularly heightened in this case because the parties did not previously agree upon an alternative forum for litigation and New York was the

location where the Plaintiffs allegedly consumed tara flour and were treated for their alleged injuries. *See Asahi Metal*, 480 U.S. at 114 (1987).

Further, there is no question here that New York is a convenient and efficient forum for Plaintiffs to litigate this dispute. Plaintiffs reside in New York and the witnesses, including the doctors who have treated Plaintiffs, are located within the State of New York. Peruvian Nature has not established that there is a more convenient or effective forum in which Plaintiffs can seek relief for their alleged damages. Also, dismissing Peruvian Nature from this action would result in piecemeal litigation in different jurisdictions, as well as a risk inconsistent judgments.

## II. <u>JURISDICTIONAL DISCOVERY IS WARRANTED</u>

To the extent this Court finds the allegations in the SAC insufficient to confer jurisdiction, this court should order Peruvian Nature to engage in jurisdictional discovery. *See Ye Olde Time Keepers v. C.R. Martin Auctioneers*, 2018 WL 1832930, *11 (E.D.N.Y. Apr. 17, 2018) (ordering jurisdictional discovery); *Ikeda v. J Sisters 57, Inc.*, No. 14-cv-3570 (ER), 2015 WL 4096255, at *10 (S.D.N.Y. July 6, 2015).

Courts in this district have allowed jurisdictional discovery to proceed even where the defendant's connection with plaintiff's claim were more attenuated than those that exist here. *See e.g.*, *Ikeda*, 2015 WL 4096255, at *8 (S.D.N.Y. July 6, 2015) (ordering jurisdictional discovery even though there was no evidence that "any additional products manufactured by [defendant] reached the New York market").

Here, jurisdictional discovery would allow Revive to submit additional facts showing that Peruvian Nature is subject to specific jurisdiction in the State of New York. Specifically, discovery is necessary to determine (1) the precise relationship between Peruvian Nature and Miski, such as whether any supply, distributorship and/or dealership agreements exist which specify, direct and/or

target sales into New York; (2) the amount of revenue Peruvian Nature derived from goods sold within New York during the relevant time period; (3) the relationship between Peruvian Nature and Molinos and what Peruvian Nature knew about Molinos' sales of tara flour products into New York; (4) the extent to which Peruvian Nature sold tara flour products into New York through other distributors and/or intermediaries.

## CONCLUSION

Revive adopts the arguments in Plaintiffs' memorandums of law in opposition to Peruvian Nature's Motion, to the extent not inconsistent with or adverse to the arguments contained herein. Accordingly, Revive requests that the Court deny Peruvian Nature's Motion, or alternatively, direct the parties to proceed with jurisdictional discovery, as indicated above.

Dated: New York, New York
September 11, 2023

Respectfully submitted,

**COZEN O'CONNOR**

By: /s/ Richard Fama
Richard Fama, Esq.
Joel M. Maxwell, Esq.
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
212-908-1229
rfama@cozen.com
jmaxwell@cozen.com

*Attorneys For Revive Organics, Inc.*