UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

NADIA ELETRIBI, individually and on behalf of her minor child Z.G.; TONI BARBER, an individual; SHEILA BERNER, an individual; ALEXANDRA HOLUP, an individual; CARLY LUCERO, an individual; ANN LUT, an individual; JAMIE MADDEN, an individual; SONYA STEVENSON, an individual; and EMILY VUXTON, an individual;

Plaintiffs,

v.

REVIVE ORGANICS, INC. d/b/a Revive Superfoods, a Foreign Corporation; and MISKI ORGANICS SUPERFOODS, INC., a Foreign Corporation;

Defendants.

CASE NO: 1:22-cv-04362-PKC-SJB

**CONSOLIDATED COMPLAINT FOR DAMAGES AND JURY DEMAND**

NOW come Plaintiffs NADIA ELETRIBI, individually an on behalf of her minor son Z.G.; TONI BARBER; SHEILA BERNER; ALEXANDRA HOLUP; CARLY LUCERO; ANN LUT; JAMIE MADDEN; SONYA STEVENSON; and EMILY VUXTON (hereinafter "Plaintiffs" collectively), by and through their attorneys of record, Paul V. Nunes, Esq. of Heisman, Nunes & Hull, LLP, and William D. Marler, Esq. of Marler Clark, Inc., PS (*pro hac vice*), and allege as follows:

## PARTIES

1. Plaintiff Nadia Eletribi and her minor son Z.G. reside in Centereach, Suffolk County, New York, and are therefore citizens of the State of New York. Plaintiff Eletribi is the parent and legal guardian of Z.G. who is under the age of 18 and thus a minor.



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

2. Plaintiff Toni Barber resides in Rock Hill, York County, South Carolina, and is therefore a citizen of the State of South Carolina.

3. Plaintiff Sheila Berner resides in Valley Center, San Diego County, California, and is therefore a citizen of the State of California.

4. Plaintiff Alexandra "Zandi" Holup resides in Nashville, Davidson County, Tennessee, and is therefore a citizen of the State of Tennessee.

5. Plaintiff Carly Lucero resides in Valley Center, San Diego County, California, and is therefore a citizen of the State of California.

6. Plaintiff Ann Lut resides in Chicago, Cook County, Illinois, and is therefore a citizen of the State of Illinois.

7. Plaintiff Jamie Madden resides in Las Vegas, Clark County, Nevada, and is therefore a citizen of the State of Nevada.

8. Plaintiff Sonya Stevenson resides in Gibsonburg, Sandusky County, Ohio, and is therefore a citizen of the State of Ohio.

9. Plaintiff Emily Vuxton resides in New Orleans, Orleans Parish, Louisiana, and is therefore a citizen of the State of Louisiana.

10. Plaintiffs either purchased, or were gifted, and thereafter consumed a toxic, adulterated, and/or contaminated food product, namely Revive Superfoods Mango & Pineapple Smoothies prepared, manufactured, packaged, exported, distributed, and/or sold by Defendant Revive Organics, Inc., d/b/a Revive Superfoods (hereinafter "Revive Superfoods") and therefore became ill and suffered damages as further described in this complaint.

11. Defendant Revive Superfoods is a corporation, incorporated in Canada, with its headquarters and principal place of business located at 2650 Bristol Circle, Suite 500, Oakville,



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

Ontario L6H 6Z7, and is therefore a citizen of a foreign country. Revive Superfoods is registered with the U.S. FDA – FEI #3023087891.

12. Revive Superfoods prepared, manufactured, packaged, exported, distributed, and/or sold a toxic, adulterated, and/or contaminated food product, namely Revive Superfoods Mango & Pineapple Smoothies to Plaintiffs, with knowledge that its product would be directly distributed to individual members of the public in the interstate marketplace in the United States, including to consumers in the State of New York. Revive Superfoods also developed the recipe for the prepared food product, namely Revive Superfoods Mango & Pineapple Smoothies, that caused Plaintiffs' injuries as alleged in this complaint.

13. Defendant Miski Organics Superfoods, Inc. (hereinafter "Miski Organics") is a corporation, incorporated in Canada, with its headquarters and principal place of business located at 70 Ellis Dr., Unit 8, in Barrie, Ontario L4N 8Z3, and is therefore a citizen of a foreign country. Miski Organics and/or affiliated companies are registered with the U.S. FDA with FEI #3007751527 and/or FEI #3004581712.

14. Miski Organics "is a proudly (sic) family-owned Canadian company with Peruvian roots," according to statements on its website.[1] Miski Organics is in the business of, among other things, sourcing and importing food products from Peru. The website states:

> Miski Organics provides nutrient-rich, certified organic, non-GMO, gluten free products to support peoples' (sic) health. Our product line includes Andean Grains and Seeds, Dried Superfruits, Raw Dried Superfoods, Raw Cacao and Derivates – all sustainably grown and cultivated in Peru. By sourcing from local farmers in the coastal valleys, Andean mountains and Amazon region of Peru[.]

15. Miski Organics prepared, manufactured, packaged, imported, distributed and/or

[1] *See* www.miskiorganics.com.



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

sold a toxic, adulterated and/or contaminated food product, namely tara protein[2], to Revive Superfoods, who utilized the flour to manufacture the ultimately toxic, adulterated, and/or contaminated Revive Superfoods Mango & Pineapple Smoothies that are the subject of this action.

16. At all material times relevant, Miski Organics prepared, manufactured, packaged, exported, distributed, and/or sold food products to a customer base that spans the continent of North America, including customers in the State of New York. Miski's website states as follows: "Our customers include health-conscious consumers, retailers, distributors, and food and beverage companies across North America." Therefore, Miski Organics had continuous and systematic contact with the State of New York through its exportation, distribution and/or sale to customers in the State of its food products, which include tara protein which was incorporated into the Revive Superfoods Mango & Pineapple Smoothies that are the subject of this lawsuit,

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy far exceeds $75,000.00, exclusive of costs; because the matter is between a Citizens of several states including New York, the Plaintiffs, and two foreign corporations; and because i) the Defendants have continuous and systematic contacts in the United States, including the State of New York, and/ or ii) the Defendants have certain minimum contacts with the State of New York such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice and/or iii) (a) the Defendants purposely availed themselves jointly and severally, of this forum or purposely directed its activities toward it, (b) plaintiffs' claims arise out of or relate to those contacts and (c) the exercise

[2] Also known as tara flour, tara protein flour, tara powder and/or tara protein powder.



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

of jurisdiction is reasonable and/or iv) Defendants are subject to jurisdiction under the State of New York's long-arm jurisdiction statute.

18. Venue in the United States District Court for the Eastern District of New York is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims and causes of action occurred in this judicial district, and because the Defendants are subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

**GENERAL ALLEGATIONS**

19. Revive Superfoods was founded in 2018 and is one of the largest direct-to-consumer food brands that operate in the United States.

20. Revive Superfoods self-described mission is to "provide accessible superfoods that are sustainably sourced without compromising taste and price."[3]

21. Revive Superfoods products are marketed (quoting from its own website) as "chef-crafted super meals that are cost-effective and ready-to-eat in minutes." The product recipes include "pre-portioned, flavorful superfood smoothies, meals, oats, soups, and falafel pops."[4]

22. Revive Superfoods purports to "use simple, honest ingredients that are flash-frozen at peak nutrition and are available in convenient on-the-go cups."[5]

23. Revive Superfoods is subscription-based and offers monthly and weekly plans that allow customers to order their choice of pre-portioned items from a set menu of options. Customers can build their own custom box and select 9, 12, or 24 cups per week or 12 or 24 cups per month.[6]

[3] Revive Foods, *Our Story*, https://revivesuperfoods.com/about/ *(Last accessed July 21, 2022).*
[4] *Id.*
[5] *Id.*
[6] *Id.*



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

24. In addition to the Plaintiffs, numerous people across the United States developed an illness syndrome identical or substantially like the Plaintiffs' after consuming Revive Superfoods Mango & Pineapple Smoothies having no shared exposures other than their consumption of Revive Superfoods Smoothies, particularly Revive Superfoods Mango & Pineapple Smoothies that included the ingredient tara protein.

25. The ingredients used in Revive Superfoods Mango & Pineapple Smoothies were:[7]

- Mango
- Banana
- Mango Powder
- Camu Camu
- Pineapple
- *Tara Protein*
- Lime Extract

26. According to the U.S. Food and Drug Administration, on June 19, 2022, Daily Harvest Inc., a direct-to-consumer food brand like Revive Superfoods, voluntarily recalled approximately 28,000 units of its French Lentil + Leek Crumbles product produced between April 28 and June 17, 2022.

27. The recall followed reports that more than 470 consumers had experienced illness or adverse reactions after their consumption of the French Lentil + Leek Crumbles that included the ingredient tara protein. The illnesses reported by the consumers of the Daily Harvest French Lentil + Leek Crumbles were like those reported by persons who fell ill after consuming Revive

---

[7] Revive Foods, Smoothies, https://revivesuperfoods.com/about/ (Accessed July 4, 2022).



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

Superfoods Mango & Pineapple Smoothies.

28. The ingredients used in Daily Harvest's French Lentil + Leek Crumbles were:[8]

- French Lentil
- Butternut Squash
- Hemp Seed
- Quinoa
- Cremini
- *Tara Protein*

29. The only common ingredient shared by Daily Harvest's French Lentil + Leek Crumbles and Revive Superfoods' Mango & Pineapple Smoothies (both of which caused similar gastrointestinal injury) was tara protein. In both cases, the tara protein was supplied by Molinos, a Peruvian company, which manufactured it in Peru from the native tara shrub or tree; the tara protein was then used by Daily Harvest and Revive Superfoods as a plant-based source of protein in their respective French Lentil + Leek Crumbles and Mango & Pineapple Smoothie products.

30. On July 19, 2022, Daily Harvest issued a communication to its customers advising that, following internal investigations, it had identified tara, an ingredient in its French Lentil + Leek Crumbles product, as the cause of the reported illnesses.

31. Revive Superfoods Mango & Pineapple Smoothies was the only one of its products that contained tara protein.

32. Revive Superfoods discontinued the sale of its Mango & Pineapple Smoothies. Tellingly, it discontinued the sale of only this specific product. Yet, unlike Daily Harvest, Revive

[8] Daily Harvest, https://www.daily-harvest.com/ (Accessed July 3, 2022).



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

Superfoods never issued a recall for its tara-containing product, Mango & Pineapple Smoothies.

33. The tara protein was imported by Miski for use in Revive Superfoods Mango & Pineapple Smoothies. The tara protein was shipped from Peru to the State of New York, and eventually onward to Ontario.

34. Section 415 of the Food Drug & Cosmetic Act (21 U.S.C. §350d) requires domestic and foreign facilities that manufacture, process, pack, or hold food for human or animal consumption in the United States to register with the FDA.

35. The FDA publishes a quarterly "List of Participants" subject to its Foreign Supplier Verification Programs ("FSVP"). Participants in the FDA's FSVP are responsible for performing risk-based foreign supplier verification activities to ensure that the food imported is not adulterated under section 402 of the FD&C Act (21 U.S.C. §342).

36. Revive Superfoods was registered and identified as a participant in the FDA's list of participants for the FSVP during the period of the outbreak in at least two states, California and Pennsylvania. Therefore, Revive Superfoods was subject to the FDA's FSVP.

37. The tara protein imported by Miski and utilized in Revive Superfoods Mango & Pineapple Smoothies had not been evaluated for safety by the FDA or approved as a Generally Recognized as Safe ("GRAS") food additive prior to, or after its inclusion as an ingredient in Revive Superfoods Mango & Pineapple Smoothies.

38. A memorandum dated April 10, 2024, published by the FDA stated that "based on the current status of data and information, tara flour does not meet the experience based on common use in food (prior to 1958) criterion, or technical evidence of safety and the general



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

recognition of safety necessary for it to be GRAS for use in food."[9]

39. The FDA Memorandum similarly stated that "there is no food additive regulation establishing safe conditions of use of tara flour.[10]

40. As such, the FDA concluded the following:[11]

a. "Based on a review of the available information, the use or intended use of tara flour in conventional food for humans is not eligible for a listed exception to regulation as a food additive."

b. "Accordingly, when tara flour is added or intended for addition to conventional food, it constitutes the use of an unapproved food additive and, therefore renders it an unsafe food additive within the meaning of Section 409(a) of the [Food Drug & Cosmetic] Act."

c. "Food that is, bears, or contains an unsafe food additive, such as tara flour, is adulterated under 402(a)(2)(C)(i) of the [Food Drug & Cosmetic] Act.

d. "Introducing or delivering for introduction an adulterated food into interstate commerce is a prohibited act under Section 301(a) of the [Food Drug & Cosmetic] Act."

41. Because tara protein is not an approved food additive or GRAS, the exportation or placement into the stream of commerce of tara protein to the United States as a food additive in Revive Superfoods Mango & Pineapple Smoothies is similarly illegal under the Federal Food Drug & Cosmetic Act including but not limited to 21 U.S.C. §384(a).

---

[9] FDA Division of Food Ingredients, April 10, 2024 Memorandum, Available at: https://www.fda.gov/media/178582/download?attachment, Pg. 9.
[10] *Id.*
[11] *Id.*



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

42. Revive Superfoods, as a facility registered with the FDA knew or should have known that the importation, and the placement into the stream of commerce, of an adulterated substance was a violation of the Food Drug & Cosmetic Act and the Federal Food Safety Modernization Act. Revive Superfoods breached the laws of the United States by illegally shipping its Mango & Pineapple Smoothies, which were adulterated by tara protein, into the United States. These breaches of federal law ultimately caused the illness and injuries alleged herein.

**Plaintiff Nadia Eletribi and Z.G.'s Injuries**

43. Plaintiff Nadia Eletribi received a shipment of Revive Superfoods Smoothies on February 8, 2022. The smoothies were a gift from a friend as Plaintiff Eletribi had just given birth to her baby, the named Plaintiff in this action, Z.G. The shipment included the Pineapple & Mango Smoothies, which Plaintiff Eletribi consumed over the next several days.

44. On February 18, 2022, Plaintiff Eletribi experienced sharp stomach pains, which progressed over the next day to include cold and fatigue. Plaintiff Eletribi's symptoms worsened still and on February 20, 2022, she started experiencing sharp stomach pain, severe chills, high fever, dizziness, extreme fatigue, nausea and vomiting. Plaintiff Eletribi was hospitalized for her symptoms for four days, from February 21 to February 24.

45. Unaware of what was causing her illness, Plaintiff Eletribi received another shipment of the smoothies on March 8, 2022, including the Mango & Pineapple Smoothie. Plaintiff Eletribi drank the smoothies for the next several days.

46. Plaintiff Eletribi's symptoms resurfaced on March 27, 2022, and progressed in severity to a point where, on March 29, 2022, she was admitted in hospital again. Plaintiff Eletribi spent five days in hospital this time around.

47. As she was still unaware what was causing her illness, once home Plaintiff Eletribi



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

resumed consumption of the smoothies on or about May 14, 2022. Plaintiff Eletribi was admitted to the hospital for the third time on May 16, 2022, when her symptoms remerged, as she experienced sharp stomach pain, severe chills, high fever, dizziness, extreme fatigue, nausea and vomiting and dark urine. She was discharged on May 12, 2022, the following day.

48. During the time that Plaintiff Eletribi was repeatedly consuming Revive Superfoods Smoothies and falling ill as a result, Plaintiff Eletribi was breastfeeding her recently born baby, Plaintiff Z.G. As a result, Z.G. developed elevated liver enzymes.

49. Plaintiff Eletribi continues to suffer from her symptoms following her consumption of Revive Superfoods Mango & Pineapple Smoothies, as does Plaintiff Z.G.

**Plaintiff Toni Barber's Injuries**

50. On November 9, 2022, Plaintiff Toni Barber purchased Revive Superfoods fruit Smoothies, including Revive Superfoods Mango & Pineapple Smoothies, to add into her Med-Weight loss regimen, following the guidance of her nutritionist. Plaintiff Barber made the dietary adjustment with the belief that she was making a positive health-conscious choice.

51. A few days later, on November 14, 2022, Plaintiff Barber felt nauseous, and the only thing she could manage to consume was another fruit smoothie. By 6 PM, Plaintiff Barber began to vomit and experienced significant abdominal discomfort. The intensity of her symptoms prompted her to drive herself to the emergency room, as she sensed that something was seriously wrong.

52. On her way to the emergency room, Plaintiff Barber pulled over twice so she could heave and vomit on the side of the road. By the time she arrived at Atrium Hospital Emergency Department, she was dry heaving and crying uncontrollably.

53. The ER physician assessed Plaintiff Barber's vital signs and conducted tests before



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

admitting her. The next day, Plaintiff Barber was transferred to a surgery holding room at Atrium Hospital via ambulance because her condition had deteriorated to the point where her doctor believed emergency surgery may be necessary. Plaintiff Barber continued to experience persistent nausea, and over the course of the following three days, she underwent multiple CT scans and an MRI.

54. It was not until Friday, November 18, 2022, that Plaintiff Barber was ultimately released from the hospital, five days after her admission. During her hospitalization, she underwent numerous blood draws, resulting in her arms displaying purple and blue marks. She also developed jaundice, experienced extreme fatigue, nausea, a fever, and a loss of appetite throughout her stay.

55. Even though Plaintiff Barber had returned home, her ordeal was far from over. She was unable to resume work for a week due to a severe itching that had developed.

56. Plaintiff Barber continues to suffer from her symptoms following her consumption of Revive Superfoods Mango & Pineapple Smoothies.

**Plaintiff Sheila Berner's Injuries**

57. Plaintiff Sheila Berner's daughter ordered Revive Superfoods Mango & Pineapple Smoothies on several occasions between February 2022 and April 2022.

58. Plaintiff Berner subsequently consumed Mango & Pineapple smoothies on various occasions in April 2022, and on or about April 14, 2022, Plaintiff Berner began to feel abnormal with symptoms including abdominal pain.

59. Plaintiff Berner presented to the Emergency Department at Pomerado Hospital on April 28, 2022 and described a two-week history of abdominal pain, nausea, and dark urine.

60. Routine bloodwork was ordered which revealed elevated liver enzymes. An abdominal CT scan was negative for any acute abdominal pathology. There was no clear etiology



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

for her symptoms and Plaintiff Berner was discharged home to outpatient follow up.

61. Plaintiff Berner presented to adult family medicine on June 17, 2022, for follow up evaluation where her ED visit and subsequent course were reviewed. Repeat bloodwork was ordered which showed improved but persistently elevated liver enzymes, and the tentative diagnosis was unspecified gastritis and elevated liver enzymes.

62. Plaintiff Berner presented to an adult family health care facility on June 17, 2022, for a follow up evaluation where her ED visit and subsequent course were reviewed. Repeat bloodwork was ordered which showed improved but persistently elevated liver enzymes, and the tentative diagnosis was unspecified gastritis and elevated liver enzymes.

63. Plaintiff Berner continued to suffer symptoms throughout August 2022.

**Plaintiff Alexandra Holup's Injuries**

64. Plaintiff Alexandra Holup is a singer, song writer, SAG actress, as well as a social media influencer, who frequently received Revive Superfoods Smoothies, including Revive Superfoods Mango & Pineapple Smoothie, for free.

65. On the morning of March 10, 2022, Plaintiff Holup took a fitness class, then drank a Revive Superfoods Mango & Pineapple Smoothie and went on a hike. On the hike, she felt unusually fatigued, and after having lunch, she began feeling nauseous with intense abdominal pain.

66. Over the course of the day, Plaintiff Holup's pain escalated to the point where she was sweating profusely and thrashing on the floor, screaming in pain, unable to be transported by car and begging for an ambulance to be called. Plaintiff Holup was transported by ambulance to Vanderbilt University Medical Center and given fentanyl for pain.

67. At Vanderbilt University Hospital, a CT scan revealed that Plaintiff Holup's liver



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

and gallbladder were inflamed and surrounded with fluid, and that Plaintiff Holup's liver appeared to be failing. Plaintiff Holup's bloodwork showed highly elevated liver enzymes, consistent with acute liver failure. As she lay on her hospital bed, Plaintiff Holup could hear doctors discussing a potential liver transplant.

68. Over the next few days, Plaintiff Holup's liver enzymes slowly improved, and she was discharged from the hospital. Little did she know, this was only the first of many returning bouts of illness she would experience.

69. After her discharge from the hospital, Plaintiff Holup attempted to return to her normal routine, which included the consumption of Revive Superfoods Mango & Pineapple Smoothies. But after only a few days, she felt stabbing pain in her abdomen and extreme fatigue. Plaintiff Holup again returned to the hospital where bloodwork revealed that her liver enzymes were again elevated.

70. Each time Plaintiff Holup consumed a Revive Superfoods Mango & Pineapple Smoothie, her symptoms returned, and she was in and out of the hospital several times over the course of several months.

71. Plaintiff Holup continues to suffer from her symptoms, following her consumption of Revive Superfoods Mango & Pineapple Smoothies.

**Plaintiff Carly Lucero's Injuries**

72. Plaintiff Carly Lucero ordered Revive Superfoods Mango & Pineapple Smoothies on several occasions between February 2022 and June 2022.

73. Plaintiff Lucero subsequently consumed Revive Superfoods Mango & Pineapple Smoothies on various occasions, and on or about April 6, 2022, Plaintiff Lucero began to feel abnormal with symptoms including right upper quadrant pain.



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

74. On May 16, 2022, Plaintiff Lucero presented to UCSD Primary Care. While there she described right upper quadrant pain after eating. The suspected diagnosis was gallbladder disease. Bloodwork was ordered and the need for an abdominal ultrasound was discussed.

75. Bloodwork revealed elevations in liver enzymes. An abdominal ultrasound and hepatobiliary scan were ordered, which showed negative results for acute or chronic gallbladder disease, obstruction, or other dysfunction.

76. Plaintiff Lucero was treated for her illness over the course of several visits to UCSD Primary Care.

77. Repeat bloodwork on June 3, 2022, showed improved but persistently elevated liver enzymes.

78. Plaintiff Lucero returned for repeat blood testing on July 1, 2022, by which time her liver tests had returned to normal levels.

**Plaintiff Ann Lut's Injuries**

79. Plaintiff Ann Lut ordered Revive Superfoods Mango & Pineapple Smoothies on several occasions between November 2021 and February 2022.

80. Plaintiff Lut subsequently consumed Revive Superfoods Mango & Pineapple Smoothie and on or about January 13, 2022, Plaintiff Lut began to feel abnormal with symptoms including fatigue, headache, and chest discomfort.

81. On January 14, 2022, Plaintiff Lut continued to suffer increasingly severe symptoms and, after a short time was transported by ambulance to the Emergency Department at University of Illinois where she was treated with pain medication and administered a battery of tests including a chest CT and abdominal MRI. She was eventually discharged with instructions to follow up with her primary care physician.



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

82. For the subsequent several months Plaintiff Lut was treated by physicians for liver and gallbladder function issues.

83. On or about April 30, 2022, Plaintiff Lut consumed another Mango & Pineapple Smoothie at lunch time and consequently experienced a resurgence of her previous symptoms.

84. On May 1, 2022, Plaintiff Lut developed a fever of 102 degrees and subsequently presented to the emergency department again.

85. Plaintiff Lut visited the emergency department several times between May 1, 2022, and May 5, 2022, when she was admitted and eventually underwent surgery to remove her gallbladder.

86. Plaintiff Lut continues to suffer the ill aftereffects of her injuries following her consumption of Revive Superfoods Mango & Pineapple Smoothies.

**Plaintiff Jamie Madden's Injuries**

87. Plaintiff Jamie Madden ordered Revive Superfoods Mango & Pineapple Smoothies on March 25, 2022.

88. Plaintiff Madden then subsequently consumed a Revive Superfoods Mango & Pineapple Smoothie and on or about April 10, 2022, began to feel abnormal with symptoms including abdominal pain, dark urine, and chest pain.

89. Plaintiff Madden presented to the Emergency Room on April 16, 2022, with complaints of abdominal pain for the past week, dark urine, and chest pain.

90. Blood work revealed elevations in liver enzymes and an abdominal CT Scan revealed an enlarged liver. She was admitted for further evaluation and management.

91. Plaintiff Madden's tentative diagnosis was sepsis, and she was started on broad spectrum antibiotics. Further workup did not identify any source of an infection and antibiotics



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

were discontinued. She was discharged home on April 18, 2022.

92. Plaintiff Madden present to the Emergency Room again on April 22, 2022, with unrelenting abdominal pain.

93. Multiple imaging studies were obtained which showed an enlarged liver, and a needle sample of abdominal fluid was obtained for analysis for possible infection, which resulted negative.

94. Plaintiff Madden's liver enzymes remained significantly elevated. Hepatology consultants suspected alcoholic hepatitis given Plaintiff Madden's history of moderate alcohol consumption, but a workup for chronic liver disease was otherwise negative.

95. Plaintiff Madden remained hospitalized for five days where she was treated with steroids and pain medication.

96. Plaintiff Madden was discharged home on May 4, 2022, in improved condition and a plan for close follow up with outpatient hepatology.

97. Plaintiff Madden continued to suffer the aftereffects of her illness for several months and required treatment from general physicians and specialists.

**<u>Plaintiff Sonya Stevenson's Injuries</u>**

98. Plaintiff Sonya Stevenson ordered Revive Superfoods Mango & Pineapple Smoothies on February 19, 2022.

99. Around February 28, 2022, Plaintiff Stevenson consumed a Revive Superfoods Mango & Pineapple Smoothie. Plaintiff Stevenson thereafter began to feel abnormal with symptoms including severe upper abdominal pain, nausea, headache, fever, and night sweats. The next day, she developed dark urine, jaundice, and uncontrollable itching all over her body.

100. On March 2, 2022, Plaintiff Stevenson visited her doctor's office, where blood



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

work revealed significantly elevated liver enzyme levels. She was subsequently admitted to the hospital for several days.

101. Over the following months, Plaintiff Stevenson underwent a battery of tests that left physicians puzzled about the root cause of her health issues. Eventually, she received a diagnosis of drug-induced liver injury.

102. It was not until September 2022 that Plaintiff Stevenson started to feel normal again. Both she and her husband had missed numerous days of work due to her illness.

**Plaintiff Emily Vuxton's Injuries**

103. On or about June 30, 2022, Plaintiff Emily Vuxton received a shipment of food products from Revive Superfoods that included Mango & Pineapple Smoothies.

104. Plaintiff Vuxton subsequently consumed Revive Superfoods Mango & Pineapple Smoothie, and on or about July 7, 2022, Plaintiff Vuxton began to feel abnormal with symptoms including fatigue.

105. On July 8, 2022, Plaintiff Vuxton woke up with intense abdominal pain and, after a short time, presented to Urgent Care where she was prescribed an antibiotic and an antinausea medicine, and advised to take GasX.

106. By July 11, 2022, Plaintiff Vuxton's symptoms had worsened, and she was seen by her primary care physician, Dr. Jamie Lovitt, who ordered comprehensive bloodwork and an CT scan. Plaintiff Vuxton's bloodwork showed elevated liver enzyme levels, and her PCP ordered a follow-up abdominal ultrasound.

107. On July 12, 2022, Plaintiff Vuxton had a follow-up ultrasound and additional bloodwork which showed further worsening liver levels.

108. Plaintiff Vuxton was seen by hepatology specialist Tamara Major, PA-C on July



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

13, 2022, who ordered more bloodwork continuing through July 20, 2022, and advised Plaintiff Vuxton that her symptoms may be related to something she had consumed based on her discovery of the ongoing Daily Harvest tara outbreak.

109. Plaintiff Vuxton's liver levels began to return to normal starting on or about July 15, 2022, but did not completely normalize for several weeks.

## CAUSES OF ACTION

### Count I – Strict Products Liability

110. Plaintiffs incorporate by reference, and make a part of this count, each foregoing paragraph of this Complaint.

111. At all times relevant hereto, the Defendants prepared, manufactured, packaged, distributed, and/or sold the subject toxic, illegal, adulterated, and/or otherwise contaminated food product that was purchased and consumed by Plaintiffs.

112. The toxic, illegal, adulterated, and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use by the intended public, including Plaintiffs, because Defendants' product was contaminated by a substance injurious to human health.

113. The toxic, illegal, adulterated, and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was delivered to the Plaintiffs without any change in its defective condition. The toxic, adulterated, and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed, and/or sold was used by Plaintiffs in the manner expected and intended.

114. The subject food product was expected to reach the consumers, including Plaintiffs, and be consumed by them, without substantial change. The consumers, including Plaintiffs, used the food product in the manner expected and intended, including when they consumed them.



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

115. Because the food that Plaintiffs received or purchased and consumed was toxic, illegal, adulterated, and/or otherwise contaminated, the Defendants are strictly liable to Plaintiffs for the harm proximately caused to the Plaintiffs by its manufacture and sale of toxic, adulterated, and/or otherwise contaminated food products.

116. As a direct and proximate result of the defective and unreasonably dangerous condition of the toxic, illegal, adulterated, and/or otherwise contaminated food product that the Defendants prepared, manufactured, packaged, distributed and/or sold, as set forth above, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

**Count II - Negligence**

117. Plaintiffs incorporate by reference, and make a part of this count, each foregoing paragraph of this Complaint.

118. The Defendants owed to Plaintiffs a duty to use reasonable care in the preparation, manufacture, packaging, distribution, and/or sale of their food product, the observance of which duty would have prevented or eliminated the risk that Defendants' food product would be toxic, illegal, adulterated, and/or otherwise contaminated with any dangerous pathogen. Defendants, however, breached this duty and were therefore negligent.

119. The Defendants had a duty to comply with all federal, state, and local statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture, distribution, storage, and sale of its food product, but failed to do so, and were therefore negligent. Plaintiffs were among the class of persons designed to be protected by these statutes, laws, regulations, safety codes and provisions pertaining to the preparation, manufacture, packaging, distribution, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

120. The Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure that their respective employees complied with all applicable statutes, laws, regulations, safety codes, and provisions pertaining to the preparation, manufacture,



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

distribution, packaging, and sale of similar food products. Defendants, however, breached this duty and were therefore negligent.

121. The Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, and free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, regulations, codes, and provisions and that were clean, free from adulteration, and safe for human consumption. Defendants, however, breached this duty and were therefore negligent.

122. As a direct and proximate result of Defendants' negligence as described above, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

**Count III – Negligence *Per Se***

123. Plaintiffs incorporate by reference, and make a part of this count, each foregoing paragraph of this Complaint.

124. The Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the importation, exportation, manufacture, distribution, storage, labeling, and sale of the food products that injured Plaintiffs, including the applicable provisions of the Federal Food Drug & Cosmetic Act, and similar State public health laws, all of which prohibit the sale of any food that is adulterated or otherwise injurious to health.

125. In breach of this duty, the Defendants failed to comply with the provisions of the health and safety acts identified above and, as a result, were negligent *per se* in their manufacture, distribution, packaging, and/or sale of adulterated food.

126. As a direct and proximate result of conduct by the Defendants that was negligent *per se*, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

**Count IV - Breach of Warranty**

127. Plaintiffs incorporate by reference, and make a part of this count, each foregoing paragraph of this Complaint.

128. The Defendants are liable to Plaintiffs for breaching express and implied warranties



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

that they made regarding their food product that Plaintiffs purchased and consumed. These express and implied warranties include the implied warranties of merchantability and/or fitness for a particular use. Specifically, the Defendants expressly warranted, through their sale of food to the public and by the statements and conduct of their employees and agents, that the food they prepared, manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise toxic, illegal, adulterated, contaminated, or injurious to health.

129. The toxic, adulterated, and/or otherwise contaminated food that the Defendants sold to Plaintiffs would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

130. The toxic, illegal, adulterated, and/or otherwise contaminated food sold to Plaintiffs was not fit for the uses and purposes intended, i.e., human consumption; thus, the sale of this product to Plaintiffs constituted a breach of the implied warranty of fitness for its intended use.

131. As a direct and proximate cause of the Defendants' breach of warranties, as set forth above, Plaintiffs sustained injuries and damages in an amount to be determined at trial.

**DAMAGES**

132. Plaintiffs have suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the Defendants, in an amount which shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering, both past and future; damages for loss of enjoyment of life, both past and future; medical and medical-related expenses both past and future; travel and travel-related expenses, both past and future; lost wages, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.



Marler Clark, Inc., PS
1012 First Avenue, Fifth Floor
Seattle, Washington 98104-1008
(206) 346-1888

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants awarding Plaintiffs:

a. General, special, incidental, and consequential damages as described above in an amount to be determined at the time of trial;

b. The opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

c. All such other and further relief the Court deems just, necessary and proper.

**JURY TRIAL DEMANDED**

Dated: June 10, 2024

HEISMAN NUNES & HULL LLP

/s/ *Paul V. Nunes*
Paul V. Nunes, Esq. Bar No.: PN2853
Attorneys for Plaintiff
1630 Empire Blvd., Suite 3B
Webster, New York 14580
Telephone: (585) 270-6201
PNunes@HNHattorneys.com

MARLER CLARK, INC., PS.

/s/ *William D. Marler*
William D. Marler, WSBA #17233
Attorney for Plaintiff, *pro hac vice*
The Standard Building
1012 1st Avenue, Fifth Floor
Seattle, Washington 98104
Telephone: (206) 346-1888
bmarler@marlerclark.com